681 So.2d 1001 (1996)
COMM-CARE CORPORATION,
v.
LOUISIANA TAX COMMISSION, et al.
No. 96 CA 0039.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
Paul S. West, Baton Rouge, for Plaintiff/Appellant Comm-Care Corporation.
John A. Stassi, II, Metairie, Tony C. Tillman, Leesville, for Defendant/Appellee Frank Howard, Sheriff Vernon Parish.
K. Todd Cagle and W. Mark McKee, West Monroe, for Defendants/Appellees Laymon Godwin, Sheriff, Ouachita Parish and Willie Houck, Sheriff, Lincoln Parish.
David R. Lestage, DeRidder, for Defendant/Appellee M. Bolivar Bishop, Sheriff, Beauregard Parish.
James T. Lee, Bunkie, for Defendant/Appellee Cynthia Dauzat, Ex-Officio Tax Collector for the City of Bunkie.
John F. Weeks, II, Metairie, for Defendants/Appellees William O. "Bill" Belt, Sheriff, Avoyelles Parish and Harold L. Tridico, Sheriff, Ascension Parish.
Russell Purvis, Jonesville, for Defendants/Appellees Joe Tom Trunzler, Sheriff, and Yolanda McClure, Ex-Officio Tax Collector for the Town of Jonesville.
Leu Anne Lester Greco, Baton Rouge, for Defendant/Appellee Elmer B. Litchfield, Sheriff, Parish of East Baton Rouge.
Before WATKINS and KUHN, JJ., and GUIDRY, J. Pro Tem.[1]
KUHN, Judge.
This is an appeal of the dismissal of a lawsuit brought by a non-profit corporate taxpayer to recover ad valorem taxes paid under protest after the trial court sustained peremptory exceptions raising the objections of prescription and no cause of action. The *1002 issue raised in this appeal is whether a taxpayer challenging the validity of an ad valorem taxation assessed against it must make the payment under protest before the end of the tax year in order to recover. We affirm.

FACTS
According to the allegations of its petition, plaintiff-appellant, Comm-Care Corporation ("Comm-Care"), is a non-profit, tax exempt corporation. On March 1, 1994, Comm-Care purchased ten nursing home facilities ("the facilities") which are located in nine parishes in Louisiana. Prior to its acquisition of the facilities, Comm-Care was recognized as a tax exempt organization by the United States Internal Revenue Service ("IRS"). The acquisition did not affect the IRS classification of Comm-Care as tax exempt.
On April 20, 1994, Comm-Care notified defendants-appellees, the tax collectors of each of the parishes and municipalities in which the facilities are located, of its acquisition of property and its non-profit, tax exempt status. In the written notification, Comm-Care requested the property be placed on the exempt tax rolls effective March 1, 1994.
Comm-Care received tax notices from the tax collector of each parish and municipality advising the total amount of taxes due. The various notices demanded payment by the 31st of December of the tax year.[2] In March 1995, Comm-Care paid each defendant the entire amount assessed, including interest and other fees, and advised that payment was being made under protest.
On April 5, 1995, Comm-Care filed a petition seeking a declaratory judgment declaring it to be an entity exempt from payment of ad valorem taxes and demanding a refund of all amounts paid under protest.
In its challenge of the validity of the ad valorem taxation, Comm-Care asserts pursuant to the provisions of La. Const. art. VII, Sec. 21,[3] it is entitled to be placed on the exempt tax rolls of each parish in which a facility is located and, the effective date of its exemption from ad valorem taxation should be the date it acquired the facilities, i.e., March 1, 1994. Comm-Care urges because the facilities had not been assessed for 1994 as of March 1, and it notified the assessors of its claim for exemption on April 20, 1994, prior to the filing of the 1994 tax rolls, the subject facilities must be placed on the exempt tax rolls as of March 1, 1994. Comm-Care maintains the provisions of La. R.S. 47:1952(A)[4] support its contention.
The defendants filed various declinatory, dilatory and peremptory exceptions. After a hearing on those exceptions on June 26, 1995, the trial court granted a declinatory exception *1003 pleading the objection of lis pendens in favor of M. Bolivar Bishop and dismissed him from the lawsuit. Additionally, the peremptory exceptions raising the objections of prescription and no cause of action in favor of the remaining defendants were maintained and Comm-Care's lawsuit was dismissed. From this judgment Comm-Care appeals.[5]

PRESCRIPTION
Comm-Care urges the trial court erred in granting defendants' peremptory exception raising the objection of prescription. Having complied with the provisions of La. R.S. 47:2110, Comm-Care contends its cause of action to recover taxes paid under protest is timely.
At the trial of an objection of prescription, evidence may be introduced. La. C.C.P. art. 931. In this case, however, no evidence relative to defendants' objection of prescription was introduced at the hearing. In the absence of evidence, the objection of prescription must be based upon the facts alleged in the petition, and all allegations thereof are accepted as true. Capital Drilling Co. v. Graves, 496 So.2d 487, 488 (La. App. 1st Cir.1986).
Accepting its allegations as true, Comm-Care's petition establishes that in March 1995, each of the tax collectors were paid the ad valorem taxes assessed on the property owned by Comm-Care along with interest and other fees. Additionally, each tax collector was notified the payment was made under protest. Based on Capital Drilling Co. v. Graves, 496 So.2d 487 (La.App. 1st Cir. 1986), the trial court concluded a timely payment of the taxes under protest must have been made in order to preserve the right to litigate the validity of the tax under the provisions of § 2110. The trial court found in order to have been timely, Comm-Care should have made payment by December 31, 1994.
At the time Comm-Care asserted its cause of action for recovery of taxes paid under protest, La.R.S. 47:2110 provided in relevant part:
A. No court of this state shall issue any process whatsoever to restrain the collection of an ad valorem tax imposed by the state, or by any political subdivision thereof, under authority granted to it by the legislature or by the constitution. Any person resisting the payment of any amount of tax found due, or to the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give the officer notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If suit is filed within such time for the recovery of the tax, then that portion of the taxes paid that are in dispute shall be deemed as paid under protest and such amount shall be segregated and shall be further held pending the outcome of the suit. That portion of the taxes paid by the taxpayer to the officer which is not in dispute shall not be made subject to the protest. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two percent per annum for the period from the date such funds were received by the officer to the date of such refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate of two percent per annum from the date the notice of intention to file suit for recovery of taxes was given to the officer until the date such taxes are paid.
B. The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of any and all questions arising in the enforcement *1004 of such right respecting the legality of any tax accrued or accruing or the method of enforcement thereof. In any such suit, service of process upon the officer designated by law for the collection of the tax shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.
* * * * * *
D. The right of action provided in this section shall be in addition to any rights elsewhere provided in this Sub-title, including R.S. 47:1998, affording taxpayers an opportunity to test the legality or correctness of their assessments or ad valorem taxes paid under protest before the courts of state.[6] (Footnote added.)
La. R.S. 47:2101(A)(1) states in pertinent part:
All taxes shall be collected in the calendar year in which the assessment thereof is made, ... and the taxes assessed in each year shall be due in that calendar year as soon as the tax roll is filed in the office of the recorder of mortgages ... and they shall be paid on or before the thirty-first day of December in each respective year in order to avoid the notice, advertisement, and sale required by Article VII, Section 25 of the Louisiana Constitution.
La. Const. art. VII, Sec. 25(A) provides, in pertinent part, "[h]owever, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due."
At the time Comm-Care notified the tax collectors of its payment under protest, La. R.S. 47:2171 provided, in relevant part:
On December 31 of each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes which have been assessed to him on movable property a written or printed notice, setting forth in substance that the taxes assessed to such taxpayer on movable property in the parish fell due and should have been paid in full on or before December 31; stating the aggregate assessed value of the property and the aggregate sum of the taxes for the current and all preceding years due thereon; that the taxpayer became delinquent for such taxes on December 31; that thirty days after receipt of said notice, the tax collector will seize and advertise for sale the movable property on which the taxes are due in the manner provided by law for judicial sales; that at the principal front door of the courthouse, where the civil district court of the parish is held or at the place of seizure or storage in the parish of Orleans, he will sell within the legal hours for judicial sales, for cash, and without appraisement, such portion of the movable property as the taxpayer shall point out and deliver to the tax collector, and in case the taxpayer shall not point out sufficient property that he will at once and without further delay sell for cash, without appraisement, the least quantity of the movable property which any bidder will buy for the amount of taxes assessed upon it with interest and costs for the current and all preceding years and attorney fees.[7] (Footnote added.)
In deciding the question of when the payment made under protest pursuant to the provisions of La. R.S. 47:2110 must be made in order to preserve the right to file suit within thirty days, the court in Capital Drilling Co., 496 So.2d at 490, noted the following rules of statutory construction, enunciated in *1005 Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984):
The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker....
When the expressions of a law are ["dubious,"] the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it.... When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory.
Applying these rules of statutory construction to the facts before it, the Capital Drilling court construed La. R.S. 47:2110 and § 2101(A) in pari materia and concluded that payment under protest (collection of the tax) must be made in the calendar year (not later than December 31) in which the assessment was made. Relying on former article 17 of the Civil Code, now codified in Civil Code article 13, the Capital Drilling court observed § 2110 and § 2101 are both located in Part II (Payment and Collection Procedure) of Chapter 4 (Payment and Collection) of Sub-Title III (Provisions Relating to Ad Valorem Taxes) of Title 47 (Revenue and Taxation). The Capital Drilling court noted its interpretation (i.e., a payment under protest invoked pursuant to § 2110 must be made in the calendar year in which the assessment was made) was harmonious with the provisions of La. Const. of 1974, art. VII, Sec. 25(A) and La. R.S. 47:2171.
As stated in Capital Drilling Co., the provisions of § 2101(A)(1) and § 2171 of Title 47, as well as art. VII, Sec 25(A) of the Louisiana Constitution of 1974 emphasize that ad valorem taxes are payable in full on or before December 31 of the tax year and a penalty for nonpayment of taxes is a tax sale of the property. These provisions do not indicate a taxpayer should be allowed the right to litigate a delinquent tax by payment under protest.
In Capital Drilling Co., this court explained "[t]he evident public policy behind Louisiana's constitutional and statutory scheme for the payment and collection of ad valorem taxes contemplates timely payment, whether under protest or not." The court additionally noted La. R.S. 47:1998(A)[8] requires timely payment by a taxpayer choosing to contest the correctness of an assessment pursuant to the procedure set forth in La. Const. of 1974, art. VII, Sec. 18(E).[9] To permit a taxpayer challenging the validity of the assessment to pay ad valorem taxes under protest and file suit for a refund within thirty days after payment, despite payment under protest having been made after December 31st of the tax year for which the taxes were due would give a substantial advantage to litigants suing pursuant to § 2110 *1006 over those challenging the correctness of an assessment pursuant to § 1998.
In Capital Drilling Co., 496 So.2d at 492, the court examined the language contained in § 2110, adding emphasis to the word "due" and noting the statute specifically provides that any person resisting payment of a tax found due may reserve his right to judicially litigate its validity by paying the amount found due. Again emphasizing use of the word "due" the court observed that pursuant to § 2101(A)(1) "taxes assessed in each year shall be due in that calendar year," La. Const. of 1974, art. VII, Sec. 25(A) provides for the sale of property for taxes "at the expiration of the year in which the taxes are due," and La. R.S. 47:2171 requires the delinquency notice sent by the assessor to the errant taxpayer to set forth, in pertinent part, that the taxes "fell due and should have been paid in full on or before December 31." Based on these provisions, this court concluded that ad valorem taxes are due during the year in which they are assessed and are delinquent thereafter and held that § 2110 provides for payment under protest of taxes that are due, not those that are delinquent.
Comm-Care asserts the Capital Drilling court misinterpreted § 2110 by reading it in pari materia with § 2101 and urges the plain language of § 2110(D) indicates this statute was fashioned to provide a separate remedy not connected with or dependent upon other procedural sections. In so asserting, Comm-Care reasons the express purpose of § 2110 was to provide "a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him"[10] and, this court's holding in Capital Drilling Co. defeats that purpose. The Third Circuit Court of Appeal took this position in Comm-Care Corp. v. Bishop, 95-1246, pp. 4-5 (La.App. 3d Cir. 3/6/96); 673 So.2d 212, 214. We are not bound by the holding in Comm-Care v. Bishop and decline to follow its reasoning. Moreover, we are not convinced the express purpose of providing a remedy to a taxpayer under the provisions of § 2110 is defeated by the holding in Capital Drilling. Providing "a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him" is dependent upon the taxpayer making timely payment of the taxes due. Permitting a taxpayer challenging the validity of an assessment of ad valorem taxes to make payment under protest subsequent to the conclusion of the tax year delays recovery and defeats the goal of "promptness."
Applying the Capital Drilling rationale to the facts before us, we find the payment by Comm-Care of the 1994 taxes in March 1995, as alleged in its petition, was not timely. On that date, the taxes were no longer due; they were delinquent. The trial court correctly found that Comm-Care should have made payment by December 31, 1994, in order to have been timely. Accordingly, we find no error in the trial court's dismissal of Comm-Care's lawsuit for the recovery of taxes paid under protest. Because we have concluded Comm-Care's cause of action is prescribed, we find it unnecessary to address the trial court's ruling sustaining the objection of no cause of action and pretermit such a discussion.

CONCLUSION
For the reasons herein expressed, we affirm the judgment dismissing Comm-Care's lawsuit. All costs of this appeal are assessed against Comm-Care.
AFFIRMED.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The exhibits attached to Comm-Care's petition show all the tax notices stated that taxes would become delinquent after December 31st of the tax year and advised the rate of interest which would be charged on unpaid balances, with the exceptions of the tax notice from the City of West Monroe which stated "THE 1.25% PER MONTH PENALTY APPLIES AFTER DECEMBER 31, 1994" and the tax notice from the City of Donaldsonville which contained the statement, "TAXES ARE DUE ON OR BEFORE JANUARY 1, 1995 DELINQUENT PENALTY OF 1 ¼% PER MONTH."
[3] La. Const. art. VII, Sec. 21 provides in relevant part:

In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
* * * * * *
(B)(1)(a) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax[.]
[4] La. R.S. 47:1952 provides:

A. All property subject to taxation ... shall be placed upon the assessment lists in the respective parishes or districts where situated. Assessments shall be made on the basis of the condition of things existing on the first day of January of each year; however, as to the ownership of immovable property subject to taxation, the assessor may note on the tax roll any transfer of such property which takes place after the first day of January but before the assessor files the tax roll with the tax collector as required in R.S. 47:1993, if practicable. If the assessor makes such note on the tax rolls, the tax notice shall then be sent to such owner in lieu of the owner of the property as of January first.
[5] A judgment sustaining the objections of prescription and no cause of action on behalf of defendant Frank A. Howard was signed on August 18, 1995. On September 7, 1995, a second judgment maintaining the objections of prescription and no cause of action was signed in favor of all the named defendants who were still parties to the suit, including Frank A. Howard. It is from the September 7, 1995 judgment that Comm-Care appeals.
[6] La. R.S. 47:2110 has subsequently been amended by Acts 1995, No. 53, § 1 effective July 1, 1995, and Acts 1995, No. 272, § 1, effective July 1, 1995. Because none of the provisions relevant to this matter have been substantively altered by the subsequent amendments, we cite the version of § 2110 which was in effect on the date Comm-Care notified each tax collector of its payment under protest.
[7] La. R.S. 47:2171 was amended by Acts 1995, No. 270, § 1, effective December 31, 1995. Besides designating subsections, setting forth paragraphs in Subsection (A), and attendant punctuation and capitalization changes, the only other modification of the statute affected by the amendment is a provision allowing the receipt of cashier's checks, certified checks, money orders and wire transfers in addition to the receipt of cash by the tax collector selling movable property for non-payment of taxes.
[8] At the time Comm-Care made payment of ad valorem taxes under protest in March 1995, La. R.S. 47:1998(A) provided in pertinent part:

(2) Any taxpayer who has filed suit under this provision and whose taxes have become due shall pay said taxes under protest and shall cause to issue notice to the officer designated by law for the collection of such tax.... However, the portion of taxes that is not in dispute shall be paid without being made subject to the protest.
[9] La. Const. art. VII, Sec. 18(E) provides, "Review. The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law."
[10] The original legislation, Acts 1938, No.330, provided, in pertinent part, as follows:

An Act to ... provide ... for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him.
Section 1. Be it enacted by the Legislature of Louisiana, That Act 16 of the Second Extraordinary Session of the Legislature of 1934 (amended by Act 23 of the Second Extraordinary Session of 1935) be amended and reenacted so as to read as follows:
AN ACT
To carry into effect Section 18, Article X of the Constitution of Louisiana [of 1921], and to provide ... for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him.