STEWART, J.
 

 h EnerVest Operating Company LLC, EnerVest Production Partners Ltd., and EnerVest Prod. Primos Acquisition (referred to hereafter collectively as “Ener-Vest”), the defendants herein, appeal a judgment in favor of Rich Bailey, Assessor for Ouachita Parish (“Assessor Bailey”). The trial court reversed a ruling by the Louisiana Tax Commission (“LTC”) and reinstated Assessor Bailey’s original determinations of the fair market value of gas pipelines owned by EnerVest in Ouachita Parish. At issue are various exceptions raised by EnerVest concerning venue, subject matter jurisdiction, prescription, and no right of action and the question of whether the fair market value of the pipelines should be reduced due to obsolescence. For the reasons explained in this opinion, we reverse the trial court’s judgment and reinstate the ruling of the LTC to grant EnerVest a reduction in the fair market value of its pipelines due to obsolescence.
 

 FACTS
 

 EnerVest is the owner of eight natural gas pipelines in the Monroe Field, an area that covers parts of Ouachita, Morehouse, and Union Parishes. The pipelines traverse Ouachita Parish and are subject to
 
 ad valorem
 
 taxation there. In its Ouachi-ta Parish tax returns for the 2007 tax year, EnerVest requested a reduction in the fair market value of its pipelines for obsolescence. EnerVest submitted tax form LAT 14 for each pipeline. On each form, Ener-Vest provided the pipeline’s diameter, length, type, age, and percent good, as well as its determination of the pipeline’s market value, throughput obsolescence factor, adjusted market value, and assessed value. As support for the obsolescence reduction, EnerVest submitted a | g1998 pipeline utility study by Mustang Engineering, Inc. (hereafter the “Mustang Study”) showing the actual diameter of the pipeline segments and the diameter that would be required to transport the production volumes generated from the gas field. EnerVest also submitted a graph and worksheet showing the total gas production levels in the Monroe Field from January 1999 through July 2007.
 

 Assessor Bailey rejected EnerVest’s request for a reduction for obsolescence and determined the fair market value of the pipeline property at issue to be $10,280,982, whereas EnerVest’s proposed fair market value with obsolescence taken into account in the calculation was $7,312,902.
 
 [1]
 
 EnerVest sought review of Assessor Bailey’s determinations of fair
 
 *1049
 
 market value before the Ouachita Parish Board of Review, which upheld Assessor Bailey’s valuations. Thereafter, EnerVest filed an appeal with the LTC.
 

 The LTC conducted a hearing on May 6, 2008. Appearing at the hearing were Mark Harris of K.E. Andrews & Company, a tax consulting firm representing En-erVest; Assessor Bailey; and Bob Dumas, the deputy assessor for Ouachita Parish. Assessor Bailey informed LTC that Ener-Vest’s request for an obsolescence reduction in fair market value was denied due to lack of supporting financial documentation. He also complained that two of the pipelines were not even owned by EnerVest in 1998, when the Mustang Study was done. However, Assessor Bailey | .-¡admitted that his office did not ask EnerVest for financial information to support the requested reduction for obsolescence.
 

 On behalf of Assessor Bailey, Dumas explained that balance sheets showing revenue and expenses associated with the pipelines would have been needed to substantiate the claimed obsolescence. Dumas stated that he had worked for EnerVest’s predecessor, Louisiana Gas Productions, for 35 years and that he had helped design and install some of the pipelines. According to Dumas, the pipelines had been laid at different times beginning as early as the 1920s and as recently as the 1980s. He explained that “ten times as much natural gas” flowed through the pipelines then as does now. However, he noted that the “price of gas was about one-tenth of what it is now.” Bailey further explained that income information from EnerVest was necessary because his office had no information on whether other gas companies were running gas through EnerVest’s pipelines. Noting that Ener-Vest based its claim for obsolescence on the pipeline throughput, Bailey explained that throughput does not provide enough information for determining economic obsolescence especially when a company may be running less gas through the pipelines but making more money due to the higher price of gas.
 

 Mark Harris explained that EnerVest based its obsolescence request on pipeline throughput, as shown by the Mustang Study, being less than its capacity. He explained that, according to field staff, production in the Monroe Field is declining at a rate of five percent a year and that there is little new drilling. Because of declining production, he asserted that the Lcapacity of the pipelines will never again be fully utilized. Harris explained that economic obsolescence is based on the fact that the pipelines as used now would not be valued the same as identical pipelines located in a field where capacity could be fully utilized. Stated another way, if the current pipelines were replaced, they would be replaced with pipelines having smaller diameters. Harris told the LTC that EnerVest provided Assessor Bailey with the information required by the applicable regulations, namely the formula for calculating obsolescence. He noted that the LAT rules do not mention financial data in connection with obsolescence and that Assessor Bailey did not ask for financial information from EnerVest. Moreover, Harris stated that he was told by the Assessor’s office that everyone, not just EnerVest, was being turned down for obsolescence requests. Dumas confirmed that the Assessor’s office “did not allow obsolescence for any pipeline companies in Ouachita Parish.”
 

 Additionally, Harris explained to the LTC that Assessor Bailey’s insistence on income information would actually involve valuing the minerals and go beyond determining obsolescence, which focuses on the value of the pipeline. Finally, Harris asserted that the Mustang Study is valid for
 
 *1050
 
 addressing obsolescence even though En-erVest did not operate some of the pipelines in 1998. Supporting documentation was submitted to LTC by both parties.
 

 On December 2, 2008, LTC issued a ruling that reversed Assessor Bailey’s valuations and determined fair market value of the eight pipelines at issue as proposed by EnerVest. The LTC recognized that the assessor has |fidiscretion in deciding whether to apply obsolescence. However, the assessor also has an implied duty to review information provided by the taxpayer to determine whether obsolescence is appropriate. The LTC concluded that Assessor Bailey abused his discretion by giving no weight to the evidence of obsolescence provided by EnerVest. The ruling notes that Assessor Bailey had a policy in 2007 of not granting obsolescence to any pipeline company. The LTC found that such a policy would not ameliorate the abuse of discretion considering that the Assessor’s office had granted obsolescence in prior years and then decided to deny it for 2007. The LTC further found that the policy of denying obsolescence rendered moot the argument that EnerVest did not provide documentation to support their request for obsolescence. According to the LTC, Assessor Bailey had the burden of proving the correctness of his determination that EnerVest’s request for obsolescence was incomplete. He did not meet this burden. LTC explained that when an assessor finds the information submitted by a taxpayer insufficient to grant obsolescence, the assessor should request additional documentation as provided by La. R.S. 47:1957. Here, Assessor Bailey failed to inform EnerVest that its documentation was inadequate and failed to request additional information.
 

 After the LTC’s ruling, Assessor Bailey filed a petition for judicial review in the Fourth Judicial District Court on December 22, 2008. Though only EnerVest was named a defendant, LTC was served with notice of the petition. Arguing that an appeal of an agency decision is not subject to review in the 4th JDC, EnerVest filed declinatory exceptions of improper |fivenue and lack of subject matter jurisdiction. It also filed an exception of nonjoinder of an indispensible party, namely LTC. The trial court sustained the nonjoinder exception, ordered Assessor Bailey to amend his petition to add LTC as a defendant, and deferred consideration of the remaining exceptions. On May 4, 2009, Assessor Bailey “in his official capacity as Assessor for Ouachita Parish and as the bona fide representative of the Ouachita Parish Assessor’s Office, a tax recipient body affected by the ruling under review,” filed an amended petition naming LTC as a defendant.
 

 On November 5, 2009, the district court heard arguments on the exceptions and the review petition. The district court denied EnerVest’s remaining exceptions of improper venue and lack of subject matter jurisdiction upon finding that venue was proper in the 4th JDC under La. R.S. 47:1998. The district court also reversed the LTC’s ruling and reinstated the valuations as originally determined by Assessor Bailey. As indicated by the district court’s oral reasons, it disagreed with LTC’s determination that Assessor Bailey had abused his discretion. Instead, the district court found that EnerVest had not provided Assessor Bailey sufficient documentation to show obsolescence. The district court also concluded that the record did not support EnerVest’s argument that it had provided the same documentation as in prior years when it received the obsolescence reduction and as provided to Union and Morehouse Parishes for 2007.
 

 Following the judgment vacating the LTC’s ruling and reinstating Assessor Bai
 
 *1051
 
 ley’s valuations, EnerVest filed its appeal. Additionally, |7E nerVest filed an exception of peremption with this court, arguing that Assessor Bailey failed to institute suit against the LTC within the required 30-day time period. In six assignments of error, EnerVest argues that the district court erred in denying its exceptions, in concluding that it had not provided Assessor Bailey with sufficient evidence to support obsolescence, in rejecting the LTC’s valuations, in finding that Assessor Bailey was not required to request additional information from it, in finding there was no evidence in the record to support its claim that Assessor Bailey had deviated from his past practice of granting obsolescence, and in rejecting the LTC’s conclusion that Assessor Bailey’s deviation from past practices was arbitrary.
 

 DISCUSSION
 

 Exceptions
 

 EnerVest first argues that the trial court erred in denying its exceptions of improper venue and lack of subject matter jurisdiction. EnerVest asserts that venue is governed by La. R.S. 49:964 of the Administrative Procedure Act (“A.P.A.”), which requires an action seeking judicial review of an administrative decision to be brought in the parish where the agency is located. Applying the A.P.A., proper venue for judicial review of a ruling by the LTC would be in East Baton Rouge Parish. EnerVest further argues that because Ouachita Parish was not the proper venue, the 4th JDC lacked subject matter jurisdiction. EnerVest’s arguments are wholly without merit.
 

 IsThe correctness of assessments by a parish assessor are subject to review first by the parish governing authority, which was in this matter the Ouachita Parish Police Jury sitting as the Board of Review, then by the LTC, and finally by the courts, all in accordance with procedures established by law.
 
 Holiday Bossier Limited Partnership v. Louisiana Tax Commission,
 
 574 So.2d 1280 (La.App. 2d Cir.1991),
 
 writ denied,
 
 578 So.2d 136 (La.1991). Judicial review of LTC rulings is addressed by La. R.S. 47:1998(A)(l)(a):
 

 A. (l)(a) Any taxpayer or bona fide representative of an affected tax-recipient body in the state dissatisfied with the final determination of the Louisiana Tax Commission under the provisions of R.S. 47:1989 shall have the right to institute suit within thirty days of the entry of any final decision of the Louisiana Tax Commission in the district court for the parish where the Louisiana Tax Commission is domiciled or the district court of the parish where the property is located contesting the correctness of assessment. Any taxpayer who owns property assessed in more than one parish may institute this suit in either the district court for the parish where the tax commission is domiciled or the district court of any one of the parishes in which the property is located and assessed, provided at least twenty-five percent of the parishes where the property is located are named in the suit. However, if at least twenty-five percent of the parishes are not named in the suit, then suit must be filed in the parish where the property is located.
 

 In
 
 Dow Chemical Co. v. Pitre,
 
 421 So.2d 847 (La.1982), Dow excepted to venue in a suit instituted in the district court for Iberville Parish by the Iberville Parish Assessor and other parties contesting the LTC’s reduction in an assessment of machinery, equipment, and pipelines. Dow argued that the LTC was subject to the A.P.A., which requires suit to be filed in the parish where the agency is located. The district court overruled Dow’s exception, the appellate court denied writs, and
 
 *1052
 
 then the supreme court granted writs and affirmed the district court. The supreme court recognized that R.S. 47:1998 is a specific procedure provided by the ^Legislature for judicial review of LTC rulings on appeals from decisions by local boards of review, and as asserted by the assessor, would take precedence over the more general provisions of the A.P.A.
 

 As this court noted in
 
 Holiday, supra,
 
 at footnote 2, the 1982 amendment to La. R.S. 49:967(A) to provide that the LTC is governed by the A.P.A. unless otherwise specifically provided by law appears to have legislatively overruled
 
 Dow, supra,
 
 to the extent that it held the A.P.A. to be inapplicable to the LTC. However, we find that because R.S. 47:1998 provides specific venue provisions, those specific provisions rather than the general provisions of the A.P.A. are applicable to suits for judicial review of LTC rulings under R.S. 47:1998.
 

 Therefore, under the specific venue provision of La. R.S. 47:1998(A),
 
 [2]
 
 venue for the matter before us was proper in the 4th JDC in Ouachita Parish, which is the district court of the parish where the pipeline property is located. Because venue was proper in Ouachita Parish, EnerVest’s exception of lack of subject matter jurisdiction based on its belief that Ouachita Parish was not the proper place for the suit to be heard is also without merit.
 

 Next, EnerVest argues that its exception of no right of action should have been granted. EnerVest filed this exception in response to Assessor Bailey’s amended petition in which he designated himself as appearing in his “official capacity as Assessor for Ouachita Parish and as the bona fide | ^representative of the Oua-chita Parish Assessor’s Office, a tax recipient body affected by the ruling under review.” EnerVest complains that Assessor Bailey cannot proceed as the bona fide representative of an affected tax recipient body.
 

 EnerVest’s argument is without any merit and overlooks the fact that Assessor Bailey is also appearing in his official capacity as Assessor of Ouachita Parish. La. R.S. 47:1998(C) specifies that the assessor “shall bring suit, when necessary to protect the interest of the state” and further provides that the assessor “shall also have the right of appeal.” The supreme court in
 
 Dow, supra,
 
 recognized that an assessor may bring the very type of suit at issue, namely a suit challenging the correctness of an LTC ruling that reduced an assessment, and the opinion implicitly recognizes that venue for suits for judicial review brought by an assessor is governed by the provisions of La. R.S. 47:1998. The court stated:
 

 Moreover, since the assessor may bring suit to protect the state’s interest (as was done here) under the express provisions of R.S. 47:1998 C, it is highly unlikely that the Legislature contemplated that the taxpayer could bring suit as an alternate remedy under the A.P.A., while the assessor may bring suit in a different parish under R.S. 47:1998 C.
 

 Dow,
 
 421 So.2d at 850. See also
 
 Williams v. Belle of Orleans, L.L.C.,
 
 2003-1203 (La. App. 4th Cir.12/1/04), 890 So.2d 670, in which a trial court judgment granting an exception asserting that the Assessor for Orleans Parish had no right to institute suit in his official capacity for judicial review of an LTC ruling was reversed on appeal pursuant to R.S. 47:1998(C).
 

 Lastly, EnerVest argues that the trial court erred in not granting an excep
 
 *1053
 
 tion of prescription, which is also asserted as an exception of | ^peremption on appeal. These exceptions are based on the fact that the LTC was not named a party defendant in the original petition filed by Assessor Bailey within the 30-day time period provided by R.S. 47:1998(A).
 

 First, we find no merit to EnerVest’s assertion that the 30-day period provided by La. R.S. 47:1998(A) for instituting suit for judicial review following an LTC determination is a peremptive period and that the failure of Assessor Bailey to name the LTC as a defendant within that period destroyed his right to seek review. In
 
 Naghi v. Brener,
 
 2008-2527, p. 6 (La.6/26/09), 17 So.3d 919, 923, the supreme court explained that a period is peremptive when a statute creates a right of action and stipulates the delay within which the right of action may be executed. Once the delay expires, the cause of action no longer exists.
 
 See Guillory v. Avoyelles Ry. Co.,
 
 104 La. 11, 28 So. 899, 901 (1900).
 

 La. R.S. 47:1998(A) does not create a right of action. It merely provides for judicial review as authorized by La. Const. Art. 7, § 18(E), which states:
 

 The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.
 

 Therefore, the 30-day delay in La. R.S. 47:1998(A) is not a peremptive period.
 

 When an action or defense asserted in an amended petition arises out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the filing date of the original pleading. La. C.C.P. art. 1153. In the absence of prejudice, the doctrine of relation back 112should be liberally applied.
 
 Hunsucker v. Global Business Furniture,
 
 33,972 (La.App.2d Cir.9/27/00), 768 So.2d 698,
 
 writ denied,
 
 2000-3013 (La.12/15/00), 777 So.2d 1235;
 
 Strouse v. M & M Properties,
 
 32,792 (La.App.2d Cir.3/3/00), 753 So.2d 434.
 

 Even if LTC is a necessary party defendant, Assessor Bailey’s amended petition filed May 4, 2009, relates back to the timely filed petition against EnerVest. The record shows that LTC was served with a copy of the original petition and that LTC filed its administrative hearing record into the record of the judicial review proceedings in the district court. Thus, no prejudice results from the amended petition naming LTC as a party defendant. We find no merit to Ener-Vest’s exceptions of prescription or per-emption.
 

 Correctness of Assessment
 

 EnerVest asserts that the trial court erred in finding that it did not provide Assessor Bailey with sufficient information to show obsolescence, that Assessor Bailey was not required to request additional information, and that there was no evidence in the record of the LTC hearing to show that Assessor Bailey’s denial of obsolescence was a deviation
 
 from
 
 past practices or to support the LTC’s finding that the deviation was arbitrary.
 

 As previously stated, the correctness of assessments is subject to review by the parish governing authority, the LTC, and then by the courts, all in accordance with procedures established by law. La. Const. Art. 7, § 18(E). Though La. R.S. 47:1998 provides for judicial review of LTC determinations as authorized by La. Const. Art. 7, § 18(E), it does not ¡^provide specific standards for judicial review. Where not otherwise specifically provided by law, the
 
 *1054
 
 LTC is governed by the A.P.A..
 
 [3]
 
 La. R.S. 49:967(A). Thus, the standards set forth in La. R.S. 49:964 guide our review of this matter.
 
 See Holiday Bossier Ltd. Partnership v. Louisiana Tax Commission, supra.
 

 Under La. R.S. 49:964(G), we may reverse or modify the decision of the agency only if substantial rights of the party seeking review have been prejudiced because the administrative findings, inferences, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court.
 
 Smith v. State Dept. of Health & Hospitals,
 
 39,368 (La.App.2d Cir.3/2/05), 895 So.2d 735,
 
 writ denied,
 
 2005-1103 (La.6/17/05), 904 So.2d 701.
 

 Because the district court functions as an appellate court when reviewing a final determination by an agency, the appellate court in an appeal from the district court’s judgment owes no deference to the factual findings and legal conclusions of the district court.
 
 Id.
 
 Thus, we review the findings and decision of the administrative agency and not the district court’s decision.
 
 Id.
 

 114As provided by La. Const. Art. 7, § 18(A), property subject to
 
 ad valorem
 
 taxation shall be listed on the assessment rolls at its assessed valuation, which shall be a percentage of its fair market value. Each assessor is charged with determining the fair market value of all property, except for public service property, subject to taxation within his respective parish, and the fair market value shall be determined in accordance with criteria which shall be established by law and applied uniformly throughout the state. La. Const. Art. 7, § 18(D). Fair market value is the price a willing and informed buyer and seller would agree upon under usual and ordinary circumstances; it shall be the highest price the property will bring if sold on the open market with reasonable time allowed to find a purchaser who has knowledge of all the uses and purposes to which the property is best adapted and for which it can legally be used. La. R.S. 47:2307.
 

 Guidelines for determining the fair market value of pipelines are provided in the Louisiana Administrative Code (L.A.C.). Pipelines, other than those considered public service properties, are to be assessed by parish assessors in the taxing district where located. L.A.C. 61:V:1301(A). For assessment purposes, pipelines are to be valued at cost less physical deterioration. The guidelines set forth in L.A.C. 61 :V:1301 (A)(2) state:
 

 Functional and/or economic obsolescence shall be considered in the analysis of fair market value as substantiated by the taxpayer in writing. Consistent with Louisiana R.S. 47:1957, the assessor may request additional information.
 

 For the 2007 tax year, the reporting procedures set forth at L.A.C. 61:V:1305(F) provided the following with regard to obsolescence:
 

 11SF. Assessment will be based on fair market value (refer to column on LAT 14) unless taxpayer provides evidence that conditions exist that warrant change. Economic and/or functional obsolescence is a loss in value of personal property above and beyond physical de
 
 *1055
 
 terioration. Upon a showing of evidence of such loss, substantiated by the taxpayer in writing, economic or functional obsolescence may be given.
 

 Subsection G of L.A.C. 61:V:1305 provides that economic obsolescence may be recognized with a service factor that represents the remaining utility for the pipeline; the service factor may be applied in addition to normal depreciation. The service factor is calculated using the following formula: Service Factor = (Actual Throughput/Rated capacity), which is then multiplied by the exponent “0.6.” The service factor is applied to a conversion chart set forth in Subsection G to determine the amount of economic obsolescence that may be applied.
 

 As explained in
 
 Crosstex LIG, LLC v. Bailey,
 
 2006-CA-1013, 936 So.2d 886 (La.App. 1st Cir.9/15/2006), the actual throughput is the amount of gas that passes through the pipeline, whereas the rated capacity is the maximum amount of gas as measured in billion cubic feet (BCF) that could pass through the pipeline.
 
 [4]
 
 A pipeline operating at full capacity would have a service factor near 100 percent. In that case, there would be no obsolescence. However, as the capacity of the pipeline exceeds the amount of gas that flows through it, a lower service factor would result, and obsolescence would be identified and quantified.
 
 Id.
 

 hfiThe record shows that EnerVest provided Assessor Bailey with sufficient documentation to support its claim of obsolescence. Assessor Bailey testified before the LTC that EnerVest failed to submit financial documentation to support its claim for obsolescence, and Bob Dumas, the deputy assessor, claimed that income information from EnerVest would have been necessary to determine obsolescence. However, the guidelines for calculating the fair market value of pipelines, specifically those addressing the recognition of obsolescence, do not indicate that financial data or income information is required to determine whether obsolescence should be given.
 

 The guidelines indicate that the amount of obsolescence granted, if any, is based on the service factor, which is calculated with information showing the actual throughput and the rated capacity of a pipeline.
 

 EnerVest provided Assessor Bailey with its own calculation of obsolescence in its renditions. To support its calculation, En-erVest provided data showing production levels on a monthly basis from January 1999 to July 2007, and it provided the Mustang Study showing the flow volumes through each pipeline, the actual diameter of each pipeline, and the diameter that would be required based on the flow volumes. Though the Mustang Study was done in 1998, based on the then current conditions, the data on monthly production levels shows that production has steadily decreased over the years. This data substantiates EnerVest’s claim for obsolescence.
 

 Assessor Bailey is correct in asserting that a taxpayer does not have an unqualified right to an obsolescence reduction in fair market value. In |17fact, the supreme court recently noted that parish assessors have great discretion in determining obsolescence and that they normally do not account for obsolescence absent extraordinary circumstances.
 
 Transcontinental Gas Pipeline Corp. v. Louisiana Tax Commission,
 
 2009-1988 (La.3/16/10), 32
 
 *1056
 
 So.3d 199.
 
 [5]
 
 Under the guidelines, the burden is on the party claiming obsolescence to give the assessor sufficient data to support the claim.
 
 Dow Chemical Co. v. Pitre,
 
 468 So.2d 747 (La.App. 1st 1985),
 
 writ denied,
 
 474 So.2d 1308 (La.1985).
 

 In
 
 Dow, supra,
 
 the taxpayer submitted only conclusions without supporting data in support of its request for obsolescence. Even when the assessor requested additional information, Dow did not comply. The assessor did not allow for obsolescence on the basis that Dow had not provided supporting evidence. At the LTC hearing, the LTC modified the assessment based on an appraisal submitted by Dow; the appraisal had been withheld from the assessor. Both the trial court and the appellate court found that Dow had withheld information from the assessor without just cause and that the LTC erred in using the appraisal to modify the assessment. The opinion explains that the LTC is permitted to review and correct erroneous assessments, but it may not usurp the constitutional authority of the assessor to make assessments.
 

 Unlike the situation in
 
 Dow, supra,
 
 the record shows that EnerVest provided sufficient data in support of its claim to Assessor Bailey. In | ^reviewing and correcting the assessment to grant a reduction for obsolescence, the LTC did not rely on data withheld from Assessor Bailey. Rather, the LTC found that Assessor Bailey did not take EnerVest’s documentation of obsolescence into account in making the assessment. It appears that the LTC concluded that the denial of EnerVest’s obsolescence request was part of a policy to deny obsolescence to all pipeline owners that year. Assessor Bailey’s contention that there is no evidentiary basis for the LTC’s finding of a policy to deny obsolescence is incorrect. Harris testified that he was told by the Assessor’s office that all requests for obsolescence were being denied. Bob Dumas confirmed that they “did not allow obsolescence for any pipeline companies in Ouachita Parish.” This testimony shows that the Ouachita Parish Assessor’s office determined to deny obsolescence requests for the 2007 tax year.
 

 The LTC also found that Assessor Bailey had granted EnerVest’s requests for obsolescence in prior years and then denied it for the 2007 tax year. EnerVest asserted that it submitted the same documentation in past years in support of its requests for obsolescence. Notably, Assessor Bailey does not deny the truth of EnerVest’s assertion but only contends that the record does not support it or the argument that it deviated from its past practices by denying obsolescence for 2007. Neither party submitted tax forms or renditions by EnerVest from years other than 2007 to support their argument. However, Assessor Bailey does assert that he was forced to change his policy and procedure regarding obsolescence following the
 
 Crosstex
 
 decision in which he was a party.
 

 |19In
 
 Crosstex, supra,
 
 Assessor Bailey had based the assessment on filings from previous years and rejected more recent throughput information provided by the taxpayer. This was found to be arbitrary. To the extent that
 
 Crosstex, supra,
 
 would require Assessor Bailey to change his policies and procedures, it would seem to require him to consider documentation sub
 
 *1057
 
 mitted by the taxpayer to determine whether obsolescence should be granted. Here, Assessor Bailey appears to have simply rejected or ignored the evidence of obsolescence submitted by EnerVest.
 

 Even if Assessor Baily was enacting a change in policy with regard to determining obsolescence, he should have requested additional information from En-erVest. An assessor is permitted access to a property owner’s books and accounts and has the authority to put the property owner, his agents, or employees under oath and ask questions so as to determine the fair market value of the property. La. R.S. 47:1957(C). The assessor is mandated to gather all data necessary to determine fair market value. La. R.S. 47:2324. We do not find that the burden is on the assessor to substantiate a claim for obsolescence, but we do find that when an assessor changes a policy or procedure regarding the information to be provided by a taxpayer then the assessor should take steps to inform the taxpayer of what information is required before completing the determination of fair market value and the assessment.
 

 The LTC found that Assessor Bailey abused his discretion by giving no weight to the evidence of obsolescence provided by EnerVest. The LTC reviewed the testimony and evidence submitted by Ener-Vest and determined 12nthat EnerVast had provided Assessor Bailey with the information required for determining obsolescence under the service factor formula. After this, the LTC found that the burden was then on Assessor Bailey to show the correctness of his determination that Ener-Vest’s tax forms and request for obsolescence were incomplete or incorrect and that Assessor Bailey did not meet this burden. Having reviewed the entire record, we find that the LTC’s ruling was supported by a preponderance of the evidence and that its conclusions were neither arbitrary nor an abuse of discretion. Therefore, the district court erred in reversing the LTC’s ruling and reinstating Assessor Bailey’s original determinations of fair market value and assessments.
 

 CONCLUSION
 

 For the reasons stated, we reverse and vacate the trial court’s judgment and reinstate the ruling of the LTC regarding the valuations and assessments of EnerVest’s pipeline property in Ouachita Parish. Pursuant to La. R.S. 47:1998(0, no costs are assessed to Assessor Bailey.
 

 REVERSED AND RENDERED.
 

 [1]
 

 . The record indicates that both Union and Morehouse Parishes granted EnerVest the obsolescence reduction in fair market value for the pipelines located in their respective parishes for the 2007 tax year.
 

 [2]
 

 . La. R.S. 47:1998(B) provides identical venue provisions for suits contesting changes in assessments made under written instructions of the LTC pursuant to La. R.S. 47:1990.
 

 [3]
 

 . As an example, La. R.S. 47:1998 specifies venue provisions for judicial review of LTC determinations, thereby supplanting the A.P.A. venue provision in La. R.S. 49:964(B).
 

 [4]
 

 .
 
 Crosstex, supra,
 
 is an unpublished opinion. However, La. C.C.P. art. 2168 provides that unpublished opinions that are posted to the websites of the court may be cited as authority-
 

 [5]
 

 .
 
 Transcontinental, supra,
 
 concerned whether the state's
 
 ad valorem
 
 tax scheme violates the Commerce Clause of the United Stales Constitution in its treatment of certain pipelines as public service properties subject to a 25 percent tax rate and other pipelines as “other property” subject to a 15 percent tax rate. No constitutional violation was found. The case is not specifically applicable to this matter.