MOORE, J.
Nell Shehee appeals a judgment that sustained peremptory exceptions of preclusion filed by Kilpatrick's Rose-Neath Funeral Home and by Margaret and Andy Shehee, and dismissed her (Nell's) supplemental and amending petition for a declaratory judgment. Rose-Neath, Margaret and Andy appeal the portion of the same judgment that denied their other peremptory exceptions pending a judicial determination of their good faith under La. R.S. 12:1-724 E. For the reasons expressed, we amend and affirm.
FACTUAL BACKGROUND
The case appears to arise from an intrafamily dispute between Nell Shehee (aligned with her older sister, Shane) and her younger sister, Margaret Shehee (aligned with their brother, Andy). All of them are shareholders in Rose-Neath, a closely held, family-run corporation, which was founded in 1936. Its longtime president, *746 Virginia K. Shehee, was the daughter of one of the original incorporators, L.B. Kilpatrick. By the early 2010s, Virginia owned 2,752 shares (about 46%) of the stock; her four children, Shane, Andy, Nell and Margaret, each owned 812 shares (about 13.5%). As Virginia's health failed, she executed two powers-of-attorney, both in favor of Margaret.
In 2013, Nell filed four suits: to have Virginia interdicted, to have Virginia's powers-of-attorney nullified; to prevent Margaret from voting Virginia's shares; and to recover money that was "improperly taken" from Rose-Neath by Margaret and Andy. These matters were referred to mediation, in which the parties executed a "Mediation Agreement," October 23, 2013, handwritten by the mediator. Paragraph 1 stated:
1 Management of all Shehee entities other than Kilpatrick Life Insur. Co. shall be undertaken by Nell, Margaret & Andy with regularly scheduled meetings; majority rule shall govern.* Virginia Shehee shall henceforth be a Director Emeritus of all such entities, without voting rights. This arrangement shall be confirmed via court order.
*Virginia's power of atty shall be modified to show Nell, Margaret and Andy as co-agents via majority rule. [Text of footnote written vertically in left-hand margin]
Virginia died in July 2015, ending the interdiction. Everyone seems to agree that the Mediation Agreement settled Nell's other three suits. However, Nell had maintained that it did not affect the management of Rose-Neath. The corporate charter, executed in 1936, states, in Art. VIII:
All corporate powers of this corporation, including authority to make and alter by-laws, * * * are hereby vested in its Board of Directors, which shall be composed of three (3) members.
Corporate minutes, however, show that since the early 1970s, the Board has regularly had four to eight members, and in 1996 the Board amended the bylaws to state that the "number of directors shall not be less than five (5) nor more than ten (10)." In fact, at the next shareholders' meeting after the Mediation Agreement, on April 28, 2014, Margaret nominated six Board members (Shane, Andy, Nell, herself, and two Rose-Neath key employees, Veva Grant and Max Corley), and at the April 2015 meeting, she nominated five (the same names, less Corley); all were elected unanimously.
Tensions resurfaced in early 2016. At the Board meeting on March 1, 2016, Nell proposed a motion to make Margaret account for some $30,000 in charges to the corporate credit card, which Nell felt were for Margaret's personal expenses, or to repay them within 15 days. (Margaret and Andy called this the "vindictive resolution.") Nell's motion passed 3-2 (Nell, Shane and Veva for, Margaret and Andy against).
A few weeks later, Margaret and Andy called a special shareholders' meeting to elect a new Board, consisting of only three Directors, in accordance with Rose-Neath's original charter, Art. VIII. However, before this meeting occurred, Nell executed a document, "Amendment to Articles of Incorporation," changing Art. VIII to provide that all corporate powers are vested in a Board "which shall be composed of not less than five (5) nor more than ten (10) directors." Nell filed this with the Secretary of State on April 20, 2016. Margaret and Andy have steadfastly denied that the Board ever authorized this amendment or filing.
At the start of the special shareholders' meeting, April 26, 2016, Nell and Shane's counsel, Mr. Pesnell, presented objections, *747 which were filed into the minutes. Andy, as chair, nominated Margaret to the new Board; Margaret nominated Andy and Nell. Rose-Neath's counsel, Mr. Dykes, counted the ballots and announced that Margaret and Andy had been elected to the Board. Mr. Pesnell objected orally, but Mr. Dykes disagreed and hand-delivered to him a written notice of rejection of objections.
Two days later, April 28, 2016, Nell and Shane filed this suit ("Original Petition") against Margaret, Andy and Rose-Neath. In addition to Margaret's use of the Rose-Neath credit card to charge $30,000 in personal catering expenses, they alleged that Andy had applied over $100,000 of corporate money to his personal "loan account." They demanded a declaratory judgment that all actions of the April 26 shareholders' meeting were null and void, and that the Directors were Margaret, Andy, Shane, Nell and Veva.
In early May, Margaret and Andy requested another special shareholders' meeting, this time to amend and replace the "surreptitious and illegal" amendment executed by Nell, remove all current Directors, and elect three Directors in accordance with the original Art. VIII - adding that because Nell refused to vote at the prior meeting, one Board seat was empty.
At the start of this special shareholders' meeting, May 23, 2016, Mr. Pesnell presented the same objections as before on Nell and Shane's behalf; again, these were filed in the minutes. Andy, as chair, announced the vote to amend and replace the "surreptitious and illegal" amendment filed by Nell earlier. This passed 4,376 shares to 1,624; Mr. Pesnell promptly lodged his objection to accepting this vote. Then, Andy announced the vote for three Directors. Andy nominated Margaret and a key employee, John Hensarling; Margaret nominated Andy and Nell; Nell made no nomination. Mr. Dykes, Rose-Neath's attorney, announced that Andy, Margaret and John had been elected. Mr. Pesnell lodged another objection, and Mr. Dykes hand-delivered to him a written notice of rejection of objections.
Over a month later, June 29, 2016, Nell and Shane filed a supplemental and amending petition ("Amended Petition") reiterating all claims of the Original Petition but adding a demand for declaratory judgment that all actions of the May 23 shareholders' meeting were null and void.
PROCEDURAL HISTORY
In response to the Original Petition, Margaret and Andy reconvened to enforce the Mediation Agreement and demanded a declaratory judgment that Nell's filing with the Secretary of State was null and void and that the Board consists of only three members. Nell and Shane responded that the Mediation Agreement was no longer in effect, now that Virginia was deceased. Rose-Neath conceded that over the years, the Board had "occasionally" exceeded three members, but this was only because members were unaware that the 1936 document limited the number to three. Various other incidental pleadings and motions were filed, but they are not germane to this appeal.
In July 2017, Margaret and Andy filed a document called "Peremptory Exceptions of (1) Liberative Prescription, Peremption, or Conclusiveness, with respect to the May 23, 2016, Board of Directors' Election, and (2) Supersession with respect to the April 26, 2016, Board of Directors' Election." The basis of the first was La. R.S. 12:1-724 E, which states that a corporate vote is "conclusive" unless a shareholder objects before the end of the meeting at which the vote was taken, the corporation rejects the objection, and the shareholder "proves in a summary proceeding, commenced within *748 10 days" of the notice of rejection, that the corporation's action was incorrect. Margaret and Andy argued that Nell and Shane did not file the Amended Petition until June 29, or 37 days after notice of rejection, and thus the election was conclusive. The basis of the second exception was that the May 23 election superseded the April 26 election, and thus there was nothing to challenge about the first election. Rose-Neath filed identical exceptions, adopting Margaret and Andy's arguments.
Margaret and Andy also filed a "Peremptory Exception of Preclusion." This asserted that when the parties signed the Mediation Agreement, in October 2013, Nell and Shane agreed that the management of Rose-Neath would be undertaken by Nell, Margaret and Andy, and this is enforceable as a compromise, La. R.S. 9:4111 A and La. C.C. art. 3076. They argued that Nell and Shane are simply precluded from asserting any other management scheme than that in the Mediation Agreement.
Nell and Shane filed an "Omnibus Opposition" to all exceptions. In a nutshell, they contended that the Mediation Agreement resolved only the four suits Nell filed in 2013, nothing more, and could not possibly "displace the board of any corporation"; that prescriptive and peremptive periods must be construed liberally, to allow actions to proceed; and that none of the defendants' exceptions addressed the plaintiffs' fundamental claim that Margaret and Andy breached their fiduciary duties to Virginia's succession and other heirs, La. C.C.P. art. 3191 A.
ACTION OF THE DISTRICT COURT
The parties argued the exceptions over two days in July and August 2017. Counsel for Margaret and Andy reiterated the arguments outlined above. Counsel for Rose-Neath argued that allowing the Amended Petition to relate back to the Original Petition would, in this instance, circumvent the time limitation of R.S. 12:1-724. Counsel for Nell and Shane contended that Margaret and Andy called these meetings only to "usurp" control of Rose-Neath and avoid repaying money they had stolen from the corporation and from Virginia's succession; because of these acts, they were in bad faith and the provisions of § 1-724 did not apply.
The court ruled from the bench that the Mediation Agreement "clearly" provided for management of Rose-Neath to be undertaken by Nell, Margaret and Andy, and they all signed it; hence, it was an enforceable agreement. The judgment rendered, however, was fairly intricate. It stated:
(1) The exceptions of liberative prescription, peremption or conclusiveness (May 23 meeting) and supersession (April 26 meeting) were GRANTED , if Rose-Neath acted in good faith accepting the contested votes, but DENIED , if Rose-Neath acted in bad faith; the court made "no determination as to good or bad faith."
(2) The exception of preclusion was GRANTED , as the Mediation Agreement was a legally enforceable contract.
(3) The Original and Amended Petitions were dismissed, with prejudice.
(4) The judgment is final and appealable under La. C.C.P. art. 1911.
On the final day of appellate delays, Nell (only) moved for devolutive appeal. She has raised five assignments of error.
In January 2018, feeling that the district court had not dismissed all claims, Nell filed a notice of records deposition and subpoena duces tecum against Rose-Neath. Rose-Neath moved to quash on *749 grounds that Nell had no claims left to assert. After a hearing in April, the district court held that it had made no ruling on good or bad faith issues, but that it "dismissed everything." The court granted the motion to quash.
After this ruling, Margaret and Andy, and Rose-Neath, separately answered the appeal. They have filed separate but identical briefs.
DISCUSSION
Mediation Agreement as a Valid Compromise
By her first assignment of error, Nell urges the district court erred in finding the Mediation Agreement was a valid compromise, as it was never "confirmed via court order." A compromise is a contract, La. C.C. art. 3071, and, when the parties have contemplated a certain form, "it is presumed they do not intend to be bound until the contract is executed in that form," La. C.C. art. 1947. Even if the Mediation Agreement attempted to form Rose-Neath's Board, Nell argues, it was never confirmed via court order, as contemplated. She cites a 2014 judgment confirming the agreement to make Nell, Margaret and Andy share Virginia's power-of-attorney, but shows that this judgment was silent as to corporate governance, when it could have addressed the issue. She concludes that the defendants had the burden of proof on this issue, and they did not meet it. Succession of Horrell , 2007-1533 (La. App. 4 Cir. 10/1/08), 993 So.2d 354, writs denied , 2008-2880, -2889 (La. 3/6/09), 3 So.3d 482.
The Louisiana Mediation Act, La. R.S. 9:4101 -4112, regulates the use of mediation to promote settlement of legal disputes. La. R.S. 9:4101 B. A written settlement agreement is regulated by R.S. 9:4111, which provides:
A. If, as a result of a mediation, the parties agree to settle and execute a written agreement disposing of the dispute, the agreement is enforceable as any other transaction or compromise and is governed by the provisions of Title XVII of Book III of the Civil Code, to the extent not in conflict with the provisions of this Chapter.
B. The court in its discretion may incorporate the terms of the agreement in the court's final decree disposing of the case.
Title XVII of Book III of the Civil Code, "Compromise," regulates the requirements and effects of compromise. Article 3072 provides:
A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.
Finally, Article 3076 provides:
A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.
The Mediation Agreement is written and signed by Nell, Shane, Margaret, Andy, their respective counsel and Rose-Neath's counsel. It addresses one of the issues of the mediation, i.e., that the management of Rose-Neath was to be undertaken by Nell, Margaret and Andy, with regularly scheduled meetings subject to majority rule. It obviously satisfies every formal requirement of R.S. 9:4111 and C.C. art. 3072. The district court committed no factual or legal error in so finding.
Nell strongly argues that the Mediation Agreement fails under La. C.C. art. 1947 : the parties "contemplated a certain form," Paragraph 1 contemplated confirmation "via court order," no such confirmation occurred; hence, the Mediation Agreement *750 is not valid. However, the parties offered the Mediation Agreement in evidence on the trial of the exceptions; the district court reviewed it, finding a valid, legally enforceable contract. This satisfies any need for confirmation by court order. Moreover, Art. 1947 applies "in the absence of a legal requirement." The legal requirement for a written settlement agreement under the Louisiana Mediation Act is R.S. 9:4111, and the parties complied with it. Article 1947 does not defeat the validity of the Mediation Agreement. This assignment of error lacks merit.
Interpretation of the Mediation Agreement
By her second assignment of error, Nell urges the court erred in finding the management functions of Rose-Neath were held by the Board, when they have been delegated to the president. She shows that the Mediation Agreement refers to "management," not to "Board of Directors," and argues that it cannot be construed as agreeing that only Nell, Margaret and Andy would constitute the Board. She admits that the Business Corporation Act vests management of a corporation in its board, La. R.S. 12:1-801 B, but argues that Rose-Neath's bylaws have placed management in the hands of the president; the Mediation Agreement is silent as to a Board; the record contains no evidence as to actual management; hence, the court could not find any intent to affect the Board.
By her third assignment, Nell urges the Mediation Agreement is, at best, ambiguous. The interpretation of a contract is a determination of the common intent of the parties, La. C.C. art. 2045, and parol evidence is admissible to clarify any ambiguity or show the parties' true intent, Lomark Inc. v. LavigneBaker Petroleum LLC , 12-389 (La. App. 5 Cir. 2/21/13), 110 So.3d 1107, writ denied , 2013-0654 (La. 4/26/13), 112 So.3d 848. Nell reiterates that using the word "management" instead of "Board of Directors" is ambiguous, as is the asterisk after the first sentence of Paragraph 1. She contends that the parties' conduct after signing the Mediation Agreement - holding two shareholder meetings over the next 2½ years, continuing to nominate six directors (including themselves), and not citing Art. VIII until this suit was filed - is inconsistent with its content. She submits that this conduct is evidence of the parties' true intent, Total Minatome Corp. v. Union Texas Prods. Corp. , 33,433 (La. App. 2 Cir. 8/23/00), 766 So.2d 685, 147 Oil & Gas Rep. 304 ; Kenner Indus. v. Sewell Plastics Inc. , 451 So.2d 557 (La. 1984). At the very least, she submits, the matter should be remanded for an evidentiary hearing.
Louisiana's Business Corporation Act, effective January 1, 2015, regulates, among other things, the management and voting requirements for business corporations in the state. In general, it places corporate power in the hands of the board of directors. La. R.S. 12:1-801 B provides:
B. All corporate powers shall be exercised by or under the authority of the board of directors of the corporation, and the business and affairs of the corporation shall be managed by or under the direction, and subject to the oversight, of its board of directors, subject to any limitation set forth in the articles of incorporation or in an agreement authorized under R.S. 12:1-732.[1]
Although drafted in 1936, Rose-Neath's corporate charter, Art. VIII, expresses the same concept:
*751 All corporate powers of this corporation, including authority to make and alter by-laws, * * * are hereby vested in its Board of Directors, which shall be composed of three (3) members.
In addition, each officer has the authority and obligation to perform the functions set forth in the bylaws. La. R.S. 12:1-841. Rose-Neath's bylaws delegate normal executive functions to the president. Bylaws, Art. IV, § 3, provides:
The President is the active chief executive officer, with general management of the corporation's business and power to make contracts in the ordinary course of business.
Rose-Neath's charter and bylaws reflect a standard arrangement in which the board assigns day-to-day management functions to various officers. Under this arrangement, however, the president does not usurp the fundamental corporate power of the board of directors. See, e.g. , Palowsky v. Cork , 49,515 (La. App. 2 Cir. 2/26/15), 162 So.3d 486, writ denied , 2015-0590 (La. 6/5/15), 171 So.3d 946 ; In re Tufts Oil & Gas-III , 03-1296 (La. App. 5 Cir. 3/30/04), 871 So.2d 476. Although Rose-Neath's bylaws confer much power on the president, they do not supplant the board's corporate power. Nell's second assignment of error, asserting the contrary, lacks merit.
Nell's third assignment of error relies almost entirely on the second; however, we have found that use of the term "management" instead of "Board of Directors" is not ambiguous. We recognize that an asterisk may sometimes be used to indicate a required field on a form, such as LDOL WC-1007 (Employer's First Report of Occupational Injury or Disease), and three asterisks may be used to indicate an ellipsis, State v. Broughton , 158 La. 1045, 105 So. 59 (1925). Most often, however, the asterisk refers to an inserted footnote or endnote, as in Bardwell v. American Nat'l Ins. Co. , 94 So.2d 313 (La. App. Orl. 1957), or, in this instance, a side note. From the context, we interpret this asterisk as signaling supplemental material. There is no ambiguity.
Finally, we agree that some of Margaret and Andy's conduct immediately after the Mediation Agreement - nominating six Board members in 2014, five in 2015 - appears inconsistent with the stated intent for just Nell, Margaret and Andy to undertake management. The court may refer to the conduct of the parties before and after the formation of the contract, but only if a "doubtful provision must be interpreted." La. C.C. art. 2053. Since the Mediation Agreement is not ambiguous, we need not consider extrinsic evidence. Campbell v. Melton , 2001-2578 (La. 5/14/02), 817 So.2d 69 ; Kennedy v. Saheid , 51,044 (La. App. 2 Cir. 11/16/16), 209 So.3d 985, writ denied , 2016-2241 (La. 1/23/17), 215 So.3d 681. The district court did not err in sustaining the peremptory exception of preclusion. These assignments of error lack merit.
Relation Back of the Amended Petition
By her fourth assignment of error, Nell urges the district court erred in finding that the Amended Petition did not relate back to the Original Petition. She shows that under La. C.C.P. art. 1153, an amendment relates back when it asserts an action that "arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," that only "some factual connexity" is required, Baker v. Payne & Keller of La. , 390 So.2d 1272 (La. 1980), and that the concept should be liberally applied, Bailey v. EnerVest Oper. Co. , 45,553 (La. App. 2 Cir. 6/30/10), 43 So.3d 1046, 173 Oil & Gas Rep. 264. She contends that the Original Petition challenged Margaret and Andy's attempt to seize control of the Board, as does the Amended Petition, thus *752 creating factual connexity. She also contends that there is no prejudice to the defendants when they have actual notice of the claim, Taylor v. Johnson , 617 So.2d 1209 (La. App. 3 Cir. 1993). She submits that the May 2016 shareholders' meeting call proves that Margaret and Andy had actual notice that she (Nell) was contesting their action.
Any challenge to a corporation's acceptance of votes is regulated by the Business Corporation Act, La. R.S. 12:1-724. Subsection E fixes the time limit for a challenge (with emphasis added ):
E. The corporation's acceptance or rejection of a vote * * * under this Section is conclusive unless a shareholder objects timely to the acceptance or rejection of the item and, if the corporation rejects the objection, proves in a summary proceeding, commenced within ten days after the corporation's notice to the shareholder that it has rejected the objection , that the corporation's acceptance or rejection of the item was incorrect. A shareholder's objection is timely under this Subsection only if the objection is made before the end of the shareholders' meeting at which the acceptance or rejection of the item is given effect or, if the item is relevant to an action taken by shareholders without a meeting in accordance with R.S. 12:1-704, before the corporation incurs a legal obligation in good faith reliance on its acceptance or rejection of the item.
Under this law, the timeline is (1) the objecting shareholder must lodge his or her objection before the end of the shareholders' meeting at which the action is taken, (2) the corporation must provide written notice of rejection to the objecting shareholder, either physically or electronically,[2] and (3) within 10 days of receiving this notice, the objecting shareholder must file a summary proceeding to contest the acceptance.
At the special shareholders' meeting on May 23, 2016, Nell's counsel objected the results of the elections to amend and replace the Amendment to Articles filed by Nell the previous month, to remove all five current Directors, and to elect Margaret, Andy and John Hensarling to the Board. Rose-Neath's counsel hand-delivered to Nell's counsel a written notice of rejection of objections. Nell filed her Amended Petition on June 29, 2016. Since this pleading was 37 days after notice of rejection, it was prescribed on its face.
We have closely examined Amended Petition. It mostly replicates the Original Petition, which contested votes taken at the April 26 meeting (and was filed on April 28, well within the time limit of R.S. 12:1-724 E). The replicated claims obviously arose from corporate action taken on April 26, not from action taken on May 23, and do not constitute the same conduct, transaction or occurrence. The Amended Petition adds four subparagraphs specifically contesting the actions of May 23, but it was well outside the time limit of R.S. 12:1-724 E.
Nell strongly urges that the actions at both shareholders' meetings were part of a single design to seize control of the Board, and that Margaret and Andy had ample, actual notice that she (Nell) objected to this design. On the other hand, Nell had ample, legal notice of each shareholders' meeting, and, after the April meeting, filed a timely petition; what prevented her from filing a timely petition after the May meeting?
*753 We recognize that a corporation might attempt to overwhelm an objecting shareholder by calling repeated, frequent shareholders' meetings in the hope that the objector would eventually miss the 10-day deadline. On the other hand, the objecting shareholder might file a petition and allow it to lie pending for years, in the hope that it would be considered sufficient to encompass any subsequent corporate actions. The latter situation would negate the orderly scheme of R.S. 12:1-724 and erase the time limit. Considering that votes taken on May 23 are not the same "conduct, transaction, or occurrence" as votes taken on April 26, and that § 1-724 E fixes a precise time limit to contest precise corporate actions, we conclude that the Amended Petition does not relate back to the Original Petition. This assignment of error lacks merit.
Finality of Judgment
By her fifth assignment of error, Nell urges the district court erred in ruling that the judgment signed on September 18, 2017, was a final judgment. Citing La. C.C.P. art. 1911, she contends that a final judgment is one that dismisses all the plaintiff's claims in a lawsuit, and the instant judgment cannot be final because it did not address her claim that Margaret and Andy breached their fiduciary duties by rescinding the resolution requiring them to reimburse Rose-Neath. She also cites her Original Petition, ¶ 17, accusing Margaret and Andy of "rank self-dealing."
As noted earlier, the first judgment, September 18, 2017, explicitly dismissed the Original and Amended Petitions with prejudice, and the second judgment, April 9, 2018, reiterated that the first was an "appealable final judgment" under La. C.C.P. art. 1911. Nothing in either judgment, or in the court's oral reasons, stated that any part of either petition was exempt from dismissal, including ¶ 17. The documents do not support Nell's characterization of the judgment. This assignment of error lacks merit.
Conditionality of Judgment
By answer to appeal, Rose-Neath, Margaret and Andy urge that the district court erred in failing to grant their peremptory exceptions of liberative prescription, peremption or conclusiveness (as to the May 23 meeting) and supersession (as to the April 26 meeting) unconditionally , and as a matter of law. The district court granted these only conditionally, if Rose-Neath acted in good faith in accepting the votes, but denied them if Rose-Neath acted in bad faith. This argument has merit, but because the district court also sustained the peremptory exception of preclusion as to both petitions, and later reiterated that the judgment "dismissed everything," we will address this only briefly.
The statute, R.S. 12:1-724 E, establishes a 10-day limit to file suit. Nothing in this subsection makes the time limit contingent on the corporation's good faith. Admittedly, the other four subsections all refer to "the corporation if acting in good faith," and these references may have led to district court to engraft the same concept onto Subsection E.[3] In our view, the corporation's good or bad faith may be litigated if the objecting shareholder files a timely suit under Subsection E, but the time for filing is not suspended for a determination of good faith. It was not proper for the district court to make these rulings conditional on a factual finding that was not required. The judgment is amended to sustain *754 the defendants' exceptions unconditionally.
CONCLUSION
For the reasons expressed, the first paragraph of the judgment of September 18, 2017, is amended to provide as follows:
Regarding defendants' peremptory exceptions of: (i) Liberative Prescription, Peremption, or Conclusiveness With Respect to the May 23, 2016, Shareholders' Special Meeting and (ii) Supersession With Respect to the April 26, 2016, Shareholders' Special Meeting, filed by Andy and Margaret on July 17, 2017, and by Rose-Neath on July 21, 2017, these peremptory exceptions are hereby sustained.
The second paragraph of the judgment is deleted in its entirety. The remainder of the judgment is affirmed. Appellate costs are to be paid by Nell Shehee.
AMENDED AND AFFIRMED .

R.S. 12:1-732 pertains to unanimous governance agreements and has no application to this case.

Nell has not contended, and the record does not show, that Rose-Neath failed to provide notice in compliance with R.S. 12:1-141.

The final sentence of Subsection E refers to a corporation's "good faith reliance" but this comes into play only when a vote is taken without a meeting, pursuant to R.S. 12:1-704, and has no application to this case.