# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 19-243 c/w 19-244 c/w 19-245

**D90 ENERGY, LLC**

**VERSUS**

**JEFFERSON DAVIS PARISH BOARD OF REVIEW**

************

**APPEAL FROM
THIRTY-FIRST JUDICIAL DISTRICT COURT,
PARISH OF JEFFERSON DAVIS, NO. C-1-16; C-619-16; C-181-17
HONORABLE STEVE GUNNELL, DISTRICT JUDGE**

************

**SYLVIA R. COOKS
JUDGE**

************

Court composed of Sylvia R. Cooks, Billy H. Ezell, and John E. Conery, Judges.

**REVERSED, JUDGMENT VACATED;
JEFFERSON DAVIS BOARD OF REVIEW
DECISION REINSTATED.**

Brian A. Eddington
3060 Valley Creek Drive, Suite A
Baton Rouge, LA 70808
(225) 924-4066
Attorney for Appellant, Donald Kratzer,
 Jefferson Davis Parish Assessor

Phyllis D. Sims
Linda S. Akehin
Angela Adolph
Kean Miller LLP
400 Convention Street, Suite 700
Baton Rouge, LA 70802
(225) 387-0999
  Attorneys for Appellee, D90 Energy, LLC

Terrence D. McCay
Kean Miller LLP
One Lakeshore Drive, Suite 1150
Lake Charles, LA 70629

(337) 430-0350
Kyle P. Polozola
Kean Miller LLP
2020 W. Pinhook Road, Suite 303
Lafayette, LA  70508
(337) 235-2232
 Attorney for Appellee, D90 Energy, LLC

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

D90 Energy, LLC (D90) acquired three oil wells and one saltwater disposal well in Jefferson Davis Parish in October 2012. D90's tax representative, Cochran & Company (Cochran), submitted a letter to Jefferson Davis Tax Assessor, Donald Kratzer (Kratzer), in March of 2013, with a copy of a document identified as an "Assignment, Conveyance and Bill of Sale" (Bill of Sale) along with a copy of a cancelled check in the amount of $100,000. On the basis of these documents Cochran asserted its client D90 had purchased the three wells in Jefferson Davis Parish from Goldking Resources for the sum of $100,000, despite the written representation in the Bill of Sale that the wells were purchased "for and in consideration of Ten and No/100 ($10) and other good and valuable consideration." No other documentation was provided to Kratzer by D90 or anyone on its behalf. Based on its letter and attached documentation, Cochran asserted D90's wells should be valued by Kratzer at $100,000 for tax assessment purposes. D90 submitted these same documents for subsequent tax years including 2014 and 2015, asserting each time these wells should be valued at $100,000 for tax assessment purposes. For tax year 2016, D90 informed Kratzer that the wells were all shut in but provided no supporting documentation. Based upon that representation D90 asserted the property should now be valued at $10,000. Kratzer found public information from the State of Louisiana indicating the wells were shut in as of June 2, 2017.

Kratzer did not consider the information submitted by D90 sufficient to make a determination of the value for assessing ad valorem property taxes on these wells. Additionally, Kratzer did not use D90's suggested sales price valuation approach as the sole method to establish fair market value, but, instead, used valuation tables promulgated by the Louisiana Tax Commission (Commission) which resulted in a valuation of $3,347,240 for tax year 2013 and $3,347,240 for tax year 2014. The

method used for valuation was based on the "age of the well; the depth of the well; the type of well; and the production." The Jefferson Davis Parish Board of Review (the Board) determined the values to be the same as those of Assessor Kratzer. D90 appealed that decision to the Louisiana Tax Commission (Commission). The Commission's Assistant Director, Celeste Moss, calculated the value for tax year 2013 at $3,344,584, according to her application of the Commission's Rules and Regulations. The Commission, using documentary evidence and testimony presented at the hearing before it, determined that the correct fair market value of the property for 2013 and 2014 was $235,000. The Commission arrived at this valuation accepting D90's evidence of a purchase price of $100,000 and D90's evidence submitted to the Commission that it had a plug-and-abandon liability cost of $135,000 for each of the three wells. Assessor Kratzer, having been provided the same information by D90 for tax year 2015 as for the previous years assessed the wells at $3,140,372 for tax year 2015. D90 suggested to Kratzer that the actual value, based on the alleged sale price, should be $100,000. The Board upheld the assessor's valuation. The Commission set a fair market value for tax year 2015 at the same $235,000 as for the previous tax years on the same basis. For tax year 2016, Kratzer valued the property at $1,821,213. D90 maintained the value for tax year 2016 should be lowered to $10,000 based on its assertion that the wells were shut in as of December 2016. The Board again upheld Kratzer's valuation. The Commission set the fair market value for tax year 2016 at $145,000.

D90 paid its tax obligation for 2013 and 2014 under protest but it did not pay any tax, under protest or otherwise, for tax years 2015 and 2016. D90 objected to all four years of assessments and filed protests with the Jefferson Davis Board of Review. The Board denied all of D90's protests and upheld Kratzer's assessments for 2013, 2014, 2015 and 2016. D90 appealed those rulings to the Louisiana Tax Commission. Kratzer filed exceptions challenging D90's right to attack the

2

assessments for 2015 and 2016 because D90 had not paid those taxes under protest or otherwise.

At the hearing before the Tax Commission D90 introduced new evidence and testimony in addition to the documents it originally provided to Kratzer. As to the information regarding each tax year submitted to the Commission in support of D90's position it is admitted that all such information regarding a given tax year was available to D90 at the time it or its agent submitted the original limited information to Kratzer. The Commission rendered a decision in which it determined the fair market value of the wells as recited above. It did not rule on Kratzer's exceptions concerning tax years 2015 and 2016, stating:

> The Commission rules allow for properly documented sales to be considered by the Assessor as evidence of Fair Market Value. Based on testimony and the evidence provided at [sic] hearing, we find the Fair Market Value of the wells in questions [sic] to be $100,000, plus the cost of plugging and abandonment. The Taxpayer stated that the prior owner was beginning the process to plug and abandon and, therefore, discounted the wells by an equal amount, which was reflected in the sales price.

> Therefore, the total Fair Market Value for each of years 2013 and 2014 of the wells in question should be $235,000 considering the $100,000 purchase price and the plug and abandon liability cost of $135,000 for the three wells.

Despite D90's admission at the hearing that it had not paid any amount of its 2015 or 2016 tax obligation, the Commission reached the same decision regarding tax years 2015 and 2016 without mentioning Kratzer's exceptions. Kratzer appealed the Commission's rulings to the district court. The cases were consolidated and after a hearing on the consolidated matters the district court affirmed the Commission's rulings and ordered all taxes paid under protest be refunded to D90. The trial court stated its reasons for ruling orally:

> I have to look at it from the viewpoint that the tax commissioners listened to the testimony. It viewed the witnesses. I do that all the time. It goes up on appeal, okay. The one thing I don't want the Court of Appeals to do is to put themselves as a fact finder instead of myself. And I'm not going to do that. The tax commissioner [sic] I don't see

3

abused the discretion because there was—there was evidence presented at the hearing in front of them to justify their decision, all right.

Kratzer appeals the judgment of the district court asserting five assignments of error:

1. The District Court applied an incorrect standard of review;

2. The District Court erred in failing to review the correctness of Assessor Kratzer's assessment and whether Assessor Kratzer's determination that D90 failed to submit adequate documentation of sales price constituted an abuse of discretion;

3. The District Court erred in failing to recognize that valuation of the wells owned by D90 based on a purported sales price violated the uniformity requirements of Art. VII, §18 of the Louisiana Constitution;

4. The District Court erred when it failed to dismiss D90's protests for tax years 2015 and 2016 for failure to pay the taxes due for those years;

5. The District Court erred in affirming and upholding he Tax Commission's determination of value.

## LEGAL ANALYSIS

Under the Louisiana State Constitution, Article VII, §18[1], the Parish Tax Assessor is given the exclusive right to determine the fair market value of property

---

[1]

     Section 18. **(A) Assessments.** Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraphs (C), (F), and (G), shall be a percentage of its fair market value. The percentage of fair market value shall be uniform throughout the state upon the same class of property.

     **(B) Classification.** The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:

Classifications

Percentages

| | |
|---|---|
| 1. Land | 10% |
| 2. Improvements for residential purposes | 10% |
| 3. Electric cooperative properties, excluding land | 15% |
| 4. Public service properties, excluding land | 25% |

subject to ad valorem taxation within its jurisdiction.  Fair market value is defined

in La.R.S. 47:2321 as follows:

> Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.

The criteria for determining Fair Market Value is provided in La.R.S. 47:2323

(footnote omitted):

> A. The criteria for determining fair market value shall apply uniformly throughout the state. Uniform guidelines, procedures and rules and regulations as are necessary to implement said criteria shall be adopted by the Louisiana Tax Commission only after public hearings held pursuant to the Administrative Procedure Act.
>
> B. Each assessor shall follow the uniform guidelines, procedures, and rules and regulations in determining the fair market value of all property subject to taxation within his respective parish or district. Any manual or manuals used by an assessor shall be subject to approval by the Louisiana Tax Commission or its successor agency.

---

5.   Other property                                                                15%

The legislature may enact laws defining electric cooperative properties and public service properties.

**(C) Use Value.** Bona fide agricultural, horticultural, marsh, and timber lands, as defined by general law, shall be assessed for tax purposes at ten percent of use value rather than fair market value. The legislature may provide by law similarly for buildings of historic architectural importance.

**(D) Valuation.** *Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.*

**(E) Review.** *The correctness of assessments by the assessor shall be subject to review* first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law.

La. Const. Art. VII, § 18 (1974) (emphasis added).

C. Criteria.

The fair market value of real and personal property shall be determined by the following generally recognized appraisal procedures: the market approach, the cost approach, and/or the income approach.

(1) In utilizing the market approach, the assessor shall use an appraisal technique in which the market value estimate is predicated upon prices paid in actual market transactions and current listings.

(2) In utilizing the cost approach, the assessor shall use a method in which the value of a property is derived by estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any.

(3) In utilizing the income approach, the assessor shall use an appraisal technique in which the anticipated net income is capitalized to indicate the capital amount of the investment which produces the net income.

Judicial review of administrative matters is set forth in the Administrative Procedures Act, La.R.S. 49:964:

A. (1) Except as provided in R.S. 15:1171 through 1177, a person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under this Chapter whether or not he has applied to the agency for rehearing, without limiting, however, utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury.

(2)(a) No agency or official thereof or other person acting on behalf of an agency or official thereof shall be entitled to judicial review under this Chapter.

(b) The provisions of Subparagraph (a) of this Paragraph shall not apply to the Department of Children and Family Services or an official thereof or other person acting on behalf of the department or official in appeals brought pursuant to Children's Code Article 616.1.1.

B. Proceedings for review may be instituted by filing a petition in the district court of the parish in which the agency is located within thirty days after the transmittal of notice of the final decision by the agency or, if a rehearing is requested, within thirty days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record.

C. The filing of the petition does not itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a

stay ex parte upon appropriate terms, except as otherwise provided by Title 37 of the Louisiana Revised Statutes of 1950, relative to professions and occupations. The court may require that the stay be granted in accordance with the local rules of the reviewing court pertaining to injunctive relief and the issuance of temporary restraining orders.

D. Within thirty days after the service of the petition, or within further time allowed by the court, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review. By stipulation of all parties to the review proceedings, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs. The court may require or permit subsequent corrections or additions to the record.

E. If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.

F. The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the

rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

Before we review the ruling of the district court in this matter, we first find that both the Commission and the district court erred as a matter of law in failing to grant Kratzer's exception concerning the taxpayer's right to proceed for tax years 2015 and 2016. Kratzer asserted below, and maintains here, that D90's failure to pay its taxes for 2015 and 2016, either under protest or otherwise, preclude it from attacking those assessments. The district court was silent regarding Kratzer's exception and such silence leaves this court with the presumption that the exception was overruled.

D90's representative, Daniel Silverman, owner and president of the two-man operation, testified at the Commission hearing regarding tax years 2015 and 2016:

Q. Did D90 pay the taxes on the wells it is contesting?

A. No, sir.

Q. You did not pay taxes?

A. No.

Q. Paid them under protest?

A. No.

Q. Just didn't pay them at all?

A. No.

. . . .

Q. Is it uneconomic for you to continue to make payments under protest in connection with these wells?

A. Yes; and I understand the law says that you have to file your taxes under protest, and we've reached the point, after putting over $110,000, for a small company like ours, I simply cannot pay these taxes, and continue to pay these taxes under protest, even though this Court—of this Commission—has ruled in our favor two times.

8

I've had no—I need relief; I cannot continue to pay these taxes under protest; so, yes; I understand that the taxes were due under protest; but we are unable to; it's a burden that we cannot meet with $110,000 of our money sitting with the Parish right now, even though we've prevailed both times.

In *Whitten Foundation v. Wilson*, 04-2454 p. 4 (La.App. 1 Cir. 5/19/06), 938 So.2d 100, 102, *writ denied*, 06-1563 (La. 10/27/06), 939 So.2d 1278, the first circuit held (**emphasis added**):

> In *Capital Drilling Company v. Graves,* 496 So.2d 487, 491–92 (La.App. 1 Cir.1986), this Court construed LSA–R.S. 47:2110 and 47:2101A *in pari materia* and concluded that ***payment under protest must be made in the calendar year in which the assessment is made in order to preserve the right to litigate the validity of the tax***. The Capital Drilling case has been followed in this circuit by *Comm–Care Corporation v. Louisiana Tax Commission,* 96–0039 (La.App. 1 Cir. 9/27/96), 681 So.2d 1001, *aff'd on other grounds,* 96–1711 (La.1/21/98), 706 So.2d 425 (on rehearing), and *Louisiana Employers–Managed Insurance Company v. Litchfield,* 01–0123 (La.App. 1 Cir. 12/28/01), 805 So.2d 386.

The Louisiana State Supreme Court also held in *Church Point Wholesale Beverage Co. v. Tarver*, 614 So.2d 697, 703–04 (La.1993) (footnote omitted):

> The Payment under Protest Procedure provided in LA.Rev.Stat. 47:1576 has not changed in substance since its origin. It provides that if a taxpayer protests the payment of any tax or enforcement of any tax law, he must pay the amount due and at that time give notice of intention to file suit for recovery of the tax. The amount paid is then placed in escrow for 30 days. If suit is filed within that period, the funds will be further held pending outcome of the suit. If suit is not timely filed, courts have held the taxpayer no longer has a right to proceed in district court for the recovery of taxes. *Bagneris v. City of New Orleans,* 130 So.2d 421, 424 (La.App. 4th Cir.1961).

In *Capital Drilling*, 496 So.2d at 492, the first circuit further explained (bold emphasis added) (alterations in original) (footnote mitted):

> The evident public policy behind Louisiana's constitutional and statutory scheme for the payment and collection of *ad valorem* taxes contemplates *timely* payment, whether under protest or not. **Only timely payment preserves the right to litigate the validity of the tax in court**. Thus, if the plaintiff-appellant had chosen to contest the correctness of the assessment pursuant to the procedure required by La. Const. of 1974, art. VII, § 18(E), it, nevertheless, would have been required to pay the taxes under protest. La.R.S. 47:1998(A). To adopt the plaintiff-appellant's argument would

9

be to give litigants suing under La.R.S. 47:2110 a substantial advantage over those pursuing a correctness claim under La.R.S. 47:1998.

Finally, La.R.S. 47:2110 specifically provides that any person resisting the payment of a tax found *due* **may reserve his right to judicially litigate its validity by paying the amount found due**. Pursuant to La.R.S. 47:2101(A)(1) "taxes assessed in each year shall be *due* in that calendar year...." [Emphasis added.] La. Const. of 1974, art. VII, § 25(A) provides for the sale of property for taxes "at the expiration of the year in which the taxes are *due*." [Emphasis added.] La.R.S. 47:2171 provides that the delinquency notice sent by the assessor to the errant taxpayer shall set forth, in pertinent part, that the taxes "fell *due* and should have been paid in full on or before December 31." [Emphasis added]. *Ad valorem* taxes are *due* during the year in which they are assessed and are *delinquent* thereafter. La.R.S. 47:2110 provides for payment under protest of taxes that are *due,* not those that are *delinquent.*

Louisiana Revised Statutes 47:2108., 2108.1 and 2110 were repealed in 2009 and replaced with La.R.S. 47:2132 and 2134[2]. The comments to La.R.S. 47:2132

---

[2]

A. No court of this state shall issue any process to restrain, or render any decision that has the effect of impeding, the collection of an ad valorem tax imposed by any political subdivision, under authority granted to it by the legislature or by the constitution.

B. (1) A taxpayer challenging the correctness of an assessment under R.S. 47:1856, 1857, or 1998 shall timely pay the disputed amount of tax due under protest to the officer or officers designated by law for the collection of this tax. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the correctness of the assessment shall not be made subject to the protest. The taxpayer shall submit separate payments for the disputed amount of tax due and the amount that is not in dispute and not subject to the protest.

(2)(a) If at the time of the payment of the disputed taxes under protest the taxpayer has previously filed a correctness challenge suit under the provisions of R.S. 47:1856, 1857, or 1998, such taxpayer shall give notice of the suit to the collecting officer or officers in the parish or parishes in which the property is located. This notice shall be sufficient to cause the collecting officer or officers to further hold the amount paid under protest segregated pending the outcome of the suit.

(b) If at the time of the payment of the protested tax, a correctness challenge suit is not already pending under the provisions of R.S. 47:1856, 1857, or 1998, then a suit seeking recovery of the protested payment need not be filed until thirty days from the date a final decision is rendered by the Louisiana Tax Commission under either R.S. 47:1856, 1857, or 1998. The taxpayer making the payment under protest under these circumstances must advise the collecting officer or officers in the parish or parishes in which the property is located at the time of the protest payment that the protest payment is in connection with a correctness challenge and must promptly notify the collecting officer or officers when a final decision is rendered by the Louisiana Tax Commission under either R.S. 47:1856, 1857, or 1998. The collecting officer or officers shall continue to segregate and hold the protested amount in escrow until a timely correctness challenge suit is filed.

(c) If a suit is timely filed contesting the correctness of the assessment pursuant to R.S. 47:1856, 1857, or 1998 and seeking the recovery of the tax paid under protest, then that portion of the taxes paid that are in dispute shall be deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit.

(3) In a correctness challenge suit under either R.S. 47:1856, 1857, or 1998 the officer or officers designated for the collection of taxes in the parish or parishes in which the property is located, the assessor or assessors for the parish or district, or parishes or districts, in which the property is located, and the Louisiana Tax Commission shall be the sole necessary and proper party defendants in any such suit.

(4) If the taxpayer prevails, the collecting officer or officers shall refund the amount to the taxpayer with interest at the actual rate earned on the money paid under protest in the escrow account during the period from the date such funds were received by the collecting officer or officers to the date of the refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate set forth above during the period from the date the notice of intention to file suit for recovery of taxes was given to the officer until the date the taxes are paid.

C. (1) A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer or officers, notice at the time of payment of his intention to file suit for the recovery of the protested tax. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the assessment shall not be made subject to the protest. The taxpayer shall submit separate payments for the disputed amount of tax due and the amount that is not in dispute and not subject to the protest. Upon receipt of a notice, the protested amount shall be segregated and held by the collecting officer for a period of thirty days.

(2) A legality challenge suit must be filed within thirty days from the date of the protested payment. If a suit is timely filed contesting the legality of the tax or the enforcement of a provision of the tax law and seeking recovery of the tax, then that portion of the taxes paid that are in dispute shall be further deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the tax shall not be made subject to the protest.

(3) In any such legality challenge suit, service of process upon the officer or officers responsible for collecting the tax, the assessor or assessors for the parish or district, or parishes or districts in which the property is located, and the Louisiana Tax Commission shall be sufficient service, and these parties shall be the sole necessary and proper party defendants in any such suit.

(4) If the taxpayer prevails, the collecting officer or officers shall refund such amount to the taxpayer with interest at the actual rate earned on the money paid under protest in the escrow account during the period from the date such funds were received by the collecting officer or officers to the date of the refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate set forth above during the period from the date the notice of intention to file suit for recovery of taxes was given to the officer until the date the taxes are paid.

and 2134 state that these statutes are "not intended to change the law." *See*, Comments to La.R.S. 47:2132 and 2134.

The Louisiana State Supreme Court has explained that there are two types of challenges to ad valorem tax assessments. *See*, *Gisclair v. Louisiana Tax Comm'n*, 9-7 (La. 6/26/09), 16 So.3d 1132. These are denominated as a correctness challenge and a legality challenge. In *New Orleans Riverwalk Marketplace, LLC v. La. Tax Comm'n*, 17-968, pgs. 7-12, (La. App. 4 Cir. 4/30/18), 243 So.3d 1070, 1075–78, *writ denied*, 18-889 (La. 9/28/18), 252 So.3d 925 (alterations in original), the

---

D. The right to sue for recovery of a tax paid under protest as provided in this Section shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of all questions arising in connection with a correctness challenge or the enforcement of the rights respecting the legality of any tax accrued or accruing or the method of enforcement thereof. The right to sue for recovery of a tax paid under protest as provided in this Section shall afford a legal remedy and right of action at law in the state or federal courts where any tax or the collection thereof is claimed to be an unlawful burden upon interstate commerce, or in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state. The portion of the taxes which is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of such suit shall not be made subject to the protest.

E. (1) Upon request of a taxpayer and upon proper showing by the taxpayer that the principle of law involved in an additional assessment is already pending before the courts for judicial determination, the taxpayer, upon agreement to abide by the pending decision of the courts, may pay the additional assessment under protest but need not file an additional suit. In such cases, the tax so paid under protest shall be segregated and held by the collecting officer or officers until the question of law involved has been determined by the courts and shall then be disposed of as provided in the decision of the court.

(2) If the taxpayer prevails, the officer or officers shall refund such amount to the taxpayer with interest at the actual rate earned on the money paid under protest in the escrow account during the period from the date such funds were received by the officer or officers to the date of the refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate set forth above during the period from the date the notice of intention to file suit for recovery of taxes was given to the officer until the date the taxes are paid.

COMMENT—2008

**This Section reproduces the substance of former R.S. 47:2110. It is not intended to change the law.**

La.R.S. 47:2134 (emphasis added).

fourth circuit recounted the development of the jurisprudence explaining the two types of challenge:

> [T]he Louisiana Supreme Court has made clear that there are two challenges which may be made to property tax assessments. "One track encompasses challenges to the 'correctness of assessments' by the assessor, while the other track covers challenges to the legality of the tax levied." *Gisclair v. Louisiana Tax Comm'n*, 09-7, p. 5 (La. 6/26/09), 16 So.3d 1132, 1135, citing *Triangle Marine, Inc. v. Savoie*, 95-2873, p. 3 (La. 10/15/96), 681 So.2d 937, 939. The *Gisclair* Court explained that "correctness challenges are directed at issues of regularity or correctness of the assessment, such as over-valuation and misdescription, while legality challenges are directed at issues involving claims that the assessment is void for radical defects that bring into question the existence of any valid assessment." *Id.*, 09–7, 16 So.3d at 1136, citing *Morgan's Louisiana & T.R. & S.S. Co. v. Pecot*, 50 La. Ann. 737, 742–43, 23 So. 948, 950–51 (1898).
>
> Thus, "under our jurisprudence, challenges to ad valorem property tax assessments are categorized as either challenges to the 'correctness of assessments' or challenges to the 'legality of assessments.'" *Bass P'ship v. Gravolet*, 12-0024, p. 16 (La. App. 4 Cir. 11/21/12), 105 So.3d 224, 234, *writ denied*, 12-2741 (La. 3/1/13), 108 So.3d 1176, quoting *ANR Pipeline Co. v. Louisiana Tax Comm'n*, 02-1479, p. 5 (La. 7/2/03), 851 So.2d 1145, 1148–1149.
>
> As we recognized in *Bass P'ship*:
>
>> The nature of the challenge dictates the body in which our constitution grants jurisdiction to hear and resolve these disputes. *Gisclair v. Louisiana Tax Comm'n*, 09-0007, p. 5 (La. 6/26/09), 16 So.3d 1132, 1135.
>>
>> The provision establishing the assessment correctness challenge is found in the Louisiana Constitution at Art. 7, § 18 E, which provides: "The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law." Under this provision, district courts in correctness challenges are merely granted appellate jurisdiction. *ANR Pipeline*, 02–4179, p. 6, 851 So.2d at 1149. However, pursuant to La. Const. Art. 7, § 3 and the interpreting jurisprudence, legality challenges are to be filed directly in the district court. *Gisclair*, 09–0007, p. 5, 16 So.3d at 1136; *Triangle Marine*, 95–2873, p. 4, 681 So.2d at 939; *ANR Pipeline*, 02–1479, p. 5, 851 So.2d at 1149.

*Id.*, 12–24, pp. 16–17, 105 So.3d at 234.

A correctness challenge, accordingly, seeks "to correct a value, no matter how erroneous that value may allegedly be, but does not seek to annul the assessment in toto" or one that "seeks to correct some aspect of the assessment." *Id.*, 12–0024, pp. 18–19, 105 So.3d at 234.

Conversely, "[a] challenge to the validity of a tax on exempt property is a challenge to the legality, not the correctness, of the tax." *Triangle Marine*, 95–2873, p. 6, 681 So.2d at 940. In *Triangle Marine*, vessel owners challenged the imposition of a tax on vessels on the basis that the tax was "*illegal* because their vessels enjoy a constitutional tax exemption." *Id.*, 95–2873, p. 5, 681 So.2d at 940 (emphasis supplied). The Court noted that the suit had properly been instituted "directly in district court pursuant to LSA–R.S. 47:2110 [which is] is the appropriate method for challenging a tax levy on exempt property." *Id.*, 95–2873, p. 6, 681 So.2d at 941. In reversing the lower courts' findings that the vessel owners had to first exhaust their administrative remedies under La. Const. art. 7, § 18(E) before seeking a review in the district court (and later, the court of appeal), the *Triangle Marine* Court found that "[p]laintiffs properly proceeded in district court under LSA–R.S. 47:2110 to contest these taxes because a tax assessment on exempt property is illegal." *Id.*, 95–2873, p. 7, 681 So.2d at 941.

Importantly, in *Triangle Marine*, the Supreme Court noted that the vessel owners "properly instituted suit under LSA–R.S. 47:2110 *after tax payment under protest*." (emphasis added).

In this matter, while La. R.S. 47:2132 deals with the refund of taxes erroneously paid, and is the statute under which Riverwalk ostensibly filed this lawsuit, it is clear that the object of Riverwalk's action is not the refund of taxes *erroneously* paid, but a challenge to the *validity* of a tax on exempt property. As such, it is a legality challenge and Riverwalk improperly sought review of this assessment with the Tax Commission. The Tax Commission does not have jurisdiction to consider legality challenges; as noted, "[t]he correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law." La. Const. art. 7, § 18 (E).

La. R.S. 47:2134, on the other hand, entitled "Suits to recover taxes paid under protest," recognizes the two distinct categories of challenges to ad valorem taxes. Subpart B concerns challenges to "the correctness of an assessment." Subpart C, however, concerns challenges to the legality of an assessment. It provides, in pertinent part, as follows:

> C. (1) A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer

14

or officers, notice at the time of payment of his intention to file suit for the recovery of the protested tax. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the assessment shall not be made subject to the protest. The taxpayer shall submit separate payments for the disputed amount of tax due and the amount that is not in dispute and not subject to the protest. Upon receipt of a notice, the protested amount shall be segregated and held by the collecting officer for a period of thirty days.

(2) A legality challenge suit must be filed within thirty days from the date of the protested payment. If a suit is timely filed contesting the legality of the tax or the enforcement of a provision of the tax law and seeking recovery of the tax, then that portion of the taxes paid that are in dispute shall be further deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the tax shall not be made subject to the protest.

La. R.S. 47:2134 (C)(emphasis added).

It is clear that Riverwalk initially challenged the valuation of the 2012 assessment and then withdrew that challenge, expressly accepting "the 2012 valuation of the assessment contained in tax bill number 103100121." It then sought a refund of the taxes it paid, claiming to have paid those taxes in error. While the record does not contain a dated copy of its request for a refund, in its Petition, Riverwalk indicates that the claim for a refund was made on October 20, 2014. Riverwalk maintains that the request for a refund was "timely." Indeed, a claim for taxes erroneously paid under La. R.S. 47:2132 (A) may be made "to the Louisiana Tax Commission within three years of the date of the payment." There is no jurisprudence defining the term "taxes erroneously paid. However, as we have found, this is not simply a case of an erroneous payment, but rather, a challenge as to the legality of the tax assessment.

Under La. R.S. 47:2134 C, a challenge to the legality of an ad valorem tax must pay the tax under protest and then file suit within thirty days of the date of the payment. The record contains no evidence that Riverwalk paid the tax at issue herein under protest. Moreover, it paid the tax in January, 2012 and its request for a refund was admittedly first made in October, 2014. Clearly, Riverwalk did not file its suit (after paying the tax under protest) within thirty days of its payment. Our decision is consistent with our limited jurisprudence on this issue. In *Side by Side Redevelopment, Inc. v. Marshall*, 09-1430, p. 3 (La. App. 4 Cir. 6/30/10), 43 So.3d 1059, 1061, a suit seeking a determination that a charitable organization should not owe taxes on its

15

property, this Court recognized that "[t]o challenge the validity of a tax imposed by the City of New Orleans, the taxpayer must first pay the tax under protest .... Only the timely payment of the contested tax preserves the right to litigate the validity of the tax in court." The Court then found that the organization's "failure ... to timely pay the tax under protest prohibited the district court from hearing a challenge to the validity of that tax." *Id. See also*, *Wright v. Cingular Real Estate Holdings of La., L.L.C.*, 09-1825 (La. App. 1 Cir. 7/1/10), 2010 WL 2637907 at ("if Cingular believed the 2003 tax assessment was erroneous, it could have paid the assessed amount 'under protest' and sought recovery of the payment").

Under the provisions of La.R.S. 47:2132([3] a taxpayer who has paid its tax to the local tax collector which it believes is not properly owed may present its

---

[3]

   A. *Any person who has a claim against a political subdivision **for ad valorem taxes erroneously paid into the funds of that political subdivision** may present the claim to the Louisiana Tax Commission within three years of the date of the payment, in such form and together with such proof as the tax commission may require by its rules and regulations;* however, if a person is claiming a previously unclaimed homestead exemption, it may be presented to the tax commission within five years of the date of payment. The tax commission shall consult with the assessor of the parish in which the property which is the subject of the claim is located, and after that assessor advises the tax commission that a refund is due the claimant, the tax commission shall duly examine the merits and correctness of each claim presented to it and shall make a determination thereon within thirty days after receipt of the claim.

   B. If the claim is approved, the tax commission shall authorize and direct the collector, when applicable, to correct the assessment on the roll on file in his office and shall authorize and direct, when applicable, the recorder of mortgages to change the inscription of the tax roll. The tax commission shall also authorize and direct the refund and repayment of those taxes found to be erroneously paid as provided in this Section. Provided that when the claim accrues to more than one person, as for example, the heirs and legatees of another, and the claim is determined by the tax commission to be properly due and owed, payment thereof to the party or parties asserting the same shall not be denied because of the failure or refusal of others to join in and assert the claim, but in such event only the portion due such claimant or claimants shall be paid.

   C. *The collector of ad valorem taxes in each political subdivision, upon receipt of written notice from the tax commission that a particular refund or repayment is owed, shall do one of the following:*

   (1) If the claim is made for taxes erroneously paid on property which is or could be homestead exempt or otherwise exempt, the collector shall immediately notify the affected tax recipient bodies to remit to him within thirty days their pro rata share of the refund or repayment. Upon receipt of those funds from the tax-recipient bodies, the collector shall have an additional thirty days to remit the payment in full to the tax debtor. Failure by any tax recipient body or the collector to timely remit such monies shall cause interest at the legal rate to accrue in favor of the tax debtor to be paid by the political subdivision or tax collector failing to so timely remit.

   (2) *If the claim is made for taxes erroneously paid on property which would not qualify for a homestead or other exemption, the collector shall note and record the amount of the refund or repayment owed and shall have full responsibility to ensure that*

16

correctness claim to the Commission for it to make a determination of whether the tax paid, either under protest or not under protest, was based on an erroneous assessment such as an overvaluation of the subject property. There is no provision allowing a taxpayer to seek review from the Commission when it has not paid its tax owed.

Likewise, under the provisions of La.R.S. 47:2134, a legality challenge can be made either based on the provisions of La.R.S. 47:1856, 1857 or 1998. La.R.S. 47:1856 and 1857 refer to challenges of assessments affecting public service properties and thus are not relevant to this case. Louisiana Revised Statutes 47:1998[4]

---

*such amount shall operate as a credit against future ad valorem tax liability of that property. No ad valorem taxes shall be due or collected on such property until such time as the collector certifies that a sufficient amount of taxes assessed have been waived to satisfy the refund or repayment ordered by the tax commission. No interest shall accrue or be due on any such refund or repayment.*

*(3) If the claim is made in a political subdivision which has established an alternative procedure for providing for refunds of ad valorem taxes erroneously paid as authorized by this Section, and if that alternative procedure has been submitted to and approved by the tax commission, such procedure may be utilized in lieu of the provisions of Paragraphs (1) and (2) of this Subsection.*

*D. An action of the assessor or of the tax commission rejecting or refusing to approve any claim made under the provisions of this Section may be appealed by means of ordinary proceedings to the district court having jurisdiction where the property which is the subject of the claim is located.*

[4]

A. (1)(a) Any taxpayer or bona fide representative of an affected tax-recipient body in the state dissatisfied with the final determination of the Louisiana Tax Commission under the provisions of R.S. 47:1989 shall have the right to institute suit within thirty days of the entry of any final decision of the Louisiana Tax Commission in the district court for the parish where the Louisiana Tax Commission is domiciled or the district court of the parish where the property is located contesting the correctness of assessment.

. . . .

(2) *Any taxpayer who has filed suit under this provision and whose taxes have become due shall pay such taxes under protest* and shall cause to issue notice to the officer designated by law for the collection of such tax under the provisions of R.S. 47:2134(B), and shall cause service of process to be made on the Louisiana Tax Commission as the officer designated by law to assess the property as provided for in R.S. 47:2134(B). However*, the portion of taxes that is not in dispute shall be paid without being made subject to the protest*.

B. (1) Any taxpayer or bona fide representative of an affected tax-recipient body in the state shall have the right to institute suit in either the district court for the parish where the tax commission is domiciled or the district court of the parish where the property is located, for the purpose of contesting the correctness or

expressly requires that any taxpayer challenging the Commission's ruling on the legality of an assessment must also pay the disputed tax under protest and must pay the undisputed portion without protest before proceeding to challenge the tax in court if at the time of the Commission's ruling the tax has become due. This provision is included here to address the situation in which an assessment is challenged by a taxpayer well before it is due. But that is not the situation here and thus this provision is not operative in this case. D90 asserts that this provision is not operative in this case because the taxpayer did not challenge the Commission's ruling which was in its favor. It is true that it is the Assessor who is challenging the ruling of the Commission, but this argument misapprehends the import of the statute. This statute does not mean, as D90 asserts, that the taxpayer was not required to pay its tax when it became due. It was required to do so under La.R.S. 47:2132(A) in order to bring a correctness challenge, and if it were disputing the legality of the assessment it would also have been required under La.R.S. 47:2134 to either pay the total assessed amount under protest or to pay the part of the tax it agrees it owed not under protest and pay the part in dispute under protest. Regardless of how D90's challenge to Kratazer's assessment is characterized it was a necessary prerequisite that D90 pay its tax, either under protest or otherwise, in order to preserve its right to pursue a correctness challenge as it did here. But D90 admits it did not do so for tax years

---

legality of any change in assessment made against the property under written instructions of the tax commission, pursuant to R.S. 47:1990 which suits must be instituted within thirty days after the date of the written instructions of the tax commission ordering the change.

. . . .

 (3) Any taxpayer in the state who has filed suit under these provisions and whose taxes have become due *shall pay said taxes under protest* and shall cause to issue a notice to the officer designated by law for the collection of such tax under the provisions of R.S. 47:2134(B), and shall cause service of process to be made on the Louisiana Tax Commission as provided for in R.S. 47:2134(B). However, *the portion of taxes that is not in dispute shall be paid without being made subject to the protest.*

La.R.S. 47:1998(A)(1)(a), (2), and (B)(1) and (3) (emphasis added).

2015 and 2016. Therefore, we find Kratzer's exception raised in both the Commission hearing and the district court should have been granted. Having failed to pay any of the taxes assessed for 2015 and 2016, D90 did not enjoy a cause of action or right of action to attack the assessments for those years. D90's owner acknowledged that he understood the requirement to pay under protest but admitted he failed to do so. We reverse the district court's implied ruling in this regard and reinstate the Jefferson Davis Board of Review's finding which upheld the taxes assessed for 2015 and 2016. Even if this were not so, we would reverse the district court's judgment regarding those two tax years for the same reasons we reverse its ruling for tax years 2013 and 2014 as discussed more fully below.

We turn now to our review of the district court's ruling that upheld the Commission's ruling. In *TBM-WC Sabine, LLC v. Sabine Parish Board. of Review*, 17-1189 pp. 8-10 (La.App. 3 Cir. 7/18/18), 250 So.3d 1075, 1081–82 (emphasis added) (footnote omitted) (alterations in original) we set forth the standard for appellate review of administrative rulings:

> The standard of review in this case for both the district court sitting as an appellate court, and this appellate court reviewing the decision of the district court, is set forth in the Administrative Procedures Act, La.R.S. 49:964(G). In *ANR Pipeline*, this court relied on the second circuit's reasoning in *Jones v. Southern Natural Gas Company*, 46,347, 46,348, 46,351 (La.App. 2 Cir. 4/13/11), 63 So.3d 1080, 1088, *writ not considered*, 11-1242 (La. 9/23/11), 70 So.3d 800, and *writ not considered*, 11-1242 (La. 11/4/11), 75 So.3d 911, to affirm the district court judgment reversing the LTC's ruling and reinstating the parish tax assessors' assessments. The second circuit in *Jones* set forth an appellate court's standard of review succinctly:
>
> > On review of the district court's judgment, the court of appeal owes no deference to the factual findings or legal conclusions of the district court. *Smith v. State,* 39,368 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, *writ denied*, 05–1103 [ ( ]La.6/17/05), 904 So.2d 701, and citations therein; *Bailey v. EnerVest*, [45,553 (La.App. 2 Cir. 6/30/10), 43 So.3d 1046].
>
> Under the Administrative Procedure Act, La. R.S. 49:964(G), the district court and court of appeal may reverse or modify the agency's determination if the substantial rights of the party seeking review have

19

been prejudiced because the administrative findings, inferences, conclusions or decisions are (1) in violation of constitutional or statutory provisions, (2) in excess of the agency's statutory authority, (3) made upon unlawful procedure, (4) affected by other error of law, (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record. *Smith v. State, supra; Bailey v. EnerVest, supra.*

*Id.* at 1088.

In this case, the district court, functioning as an appellate court, reversed the decision of LTC and reinstated Assessor Manasco's assessment finding LTC's determination "was neither supported nor sustainable by a preponderance of the evidence and *exceeded the authority of the Tax Commission, which is expressly limited by the Louisiana Constitution to review and not assess.*" We review the decision of the district court de novo. TBM's assignments of error focus on the district court's review of LTC's rulings and whether or not the district court employed the proper standard of review or applied the provisions of La. Const. art. 7, § 18(E) properly. *But the proper focus of this court's review is to determine whether TBM has shown that Assessor Manasco abused her great discretion in finding TBM's submissions insufficient to substantiate its requested reduction in fair market value* for economic obsolescence of the pipeline. *In reviewing LTC's decision we must determine "whether the commission manifestly erred when it determined that [the assessor] abused [her] discretion in determining that the [taxpayer] failed to sufficiently substantiate [its] claims of economic obsolescence." ANR Pipeline*, 73 So.3d at 403. In this regard we agree with the district court's conclusion that TBM fails to show Assessor Manasco abused her discretion in awarding a 12% reduction in fair market value rather than TBM's requested 85% reduction.

Likewise, in this case, as Kratzer asserts, the Commission and the district court failed to apply the proper standard of review. The district court, as we quoted above, based its decision on a determination of whether the Commission abused its discretion in evaluating the evidence and testimony before it, rather than determining on the record before it whether Kratzer abused his much discretion in arriving at a fair market value to assess the subject property based on the information provided him by D90. The Commission received evidence and testimony from D90 in support of its asserted valuation but much of that information was not provided to Assessor Kratzer. It was D90's obligation to provide that information to Kratzer. The reasonableness of Kratzer's valuation must be gauged in light of the information he

20

was provided, and his application of the Rules and Regulations promulgated by the Commission in accordance with statutory requirements which set forth the guidelines he must follow.

Our de novo review of the record leads us to conclude that Kratzer did not abuse his much discretion in reaching his valuation given the scant information provided by D90. We cannot say Kratzer abused his discretion in determining that it was not proper to base his valuation solely on an alleged sale price, when he was not provided sufficient information to determine the actual amount of the price paid and whether this was a true arms-length transaction.

Silverman testified that he employed Cochran to do his tax work for him because he is "no ad valorem tax expert." Silverman stated that Cochran "fills—he makes sure the forms are filled out correctly, and timely, and so he is the one who provided the tax forms for the three years that we've owned the property." Cochran provided very little information to Kratzer to support his conclusory representations that the wells were purchased for an amount far greater than the ten dollars recited in the "Bill of Sale" document provided.[5] Kratzer found the information provided by D90 did not provide a sufficient basis to determine the fair market value based solely on the alleged sales price. Moreover, Kratzer maintained that the rules promulgated by the Commission prohibit the use of sales price as the sole determining factor for valuation.

A. All property within the State of Louisiana shall be assessed at a percentage of Fair Market Value or Use Value, as the law provides, and either placed on the regular tax rolls, exempt rolls, or adjudicated tax rolls.

B. Assessors shall value property at 100% Fair Market Value and then assessed valuations shall be based upon the percentage classification requirements of the Louisiana Constitution, Article VII, Section 18(B).

---

[5] We note in passing that D90 provided very little documentation to support its contention that the wells were shut in as of December 2016. We point out as well, we are no longer concerned with any factors affecting the 2015 or 2016 assessments.

C. . . . .

**D. "Sales chasing" and "sales listing chasing" is expressly prohibited. "Sales chasing" is the procedure by which an individual property assessment is based upon the price the property sold for. "Sales listing chasing" is the procedure by which an individual property assessment is based upon listed sales price of the property. . .**

La. Admin Code tit. 61, Pt. V, §213 (bold emphasis added).

E. If a taxpayer appeals the Board of Review's decision on the basis that the assessor appraised his or her property on the basis of a sale or sales listing, evidence establishing that the property was reappraised at the value of, or based solely upon, the sale or sales listing shall constitute prima facie evidence of sales/listing chasing and shall create a rebuttable presumption against the assessment.

La. Amin Code tit. 61, Pt. V, § 3103.

Kratzer's employee, Deputy Assessor Wanda Adams, who was in charge of assessing these wells, testified at the hearing and explained the method she used to assess the property in accordance with the guidelines promulgated by the Commission:

> Q. Actually, I had a bunch of questions; but Mr. Silverman has already acknowledged that they didn't provide anything to you, other than a verbal representation regarding the purchase price. Let's start with that.
>
> How did you determine the value of these three wells; again, two gas wells, and a saltwater disposal well?
>
> A. Well, the values are according to the age of the well; the depth of the well; the type of well; and the production.
>
> Q. And you calculated those using the tables promulgated by the Louisiana Tax Commission?
>
> A. Yes, sir.
>
> Q. And you, also, testified you value all other oil and gas wells in Jefferson Davis parish?
>
> A. Yes, sir, I do.
>
> Q. Do you value all other wells uniformly; in the same manner?
>
> A. Yes, sir.

22

Q. And, more to the point, do you value any wells in Jefferson Davis Parish on the basis of a sales price?

A. No, sir.

. . . .

Q. Are you familiar with the fact that the regulations mandate that the sales price be at least considered by the Assessor?

A. Yes; we do take that into consideration.

Q. Were you aware of the sale for $100,000 made by D90; or purchased by D90?

A. From prior years.

Q. So you had that information when you were assessing—when you were dealing with the property?

A. From prior years.

. . . .

Q. So there would be no added obsolescence that you have given to these wells?

A. No, there was none.

Examination by Commissioner Vercher:

Q. Ms. Adams, to follow up on Cahirman Chehardy's question. There are no occasions that you use the sales price of a well in determining value?

A. No, sir.

Q. In no case?

A. No case.

Examination by Mr. Eddrington

Q. Have you ever been asked, other than this property, to use a sales price—

A. No; I haven't.

Q. –to value a well?

. . . .

Examination by Commissioner Wood:

23

Q. Were you aware that you could?

A. Hmm, I don't want to say no, because—

Commissioner Wood:

Okay.

Our de novo review of the record does not reveal any evidence put forward at the Commission hearing that points to any abuse of discretion by Kratzer or his subordinate in applying the rules and regulations promulgated by the Commission in calculating the fair market value of these wells for the purpose of determining the assessment. D90 contends it is Kratzer's responsibility to ask for or search for information necessary to make his determination of assessed value. Moreover, D90 suggests that the scant "documentation" its agent provided Kratzer, along with its own representation as to what the purchase price actually paid was, is all that was needed to make the determination of value. We rejected this argument in *TBM-WC Sabine, 250 So.3d 1075,* and *ANR Pipeline v. ANR Pipeline Co.*, 11-379 (La.App. 3 Cir. 8/10/11), 73 So.3d 398, and we reject it here. It is simply not the law. The simple question we must answer here is did Assessor Kratzer abuse his much discretion in refusing to base his valuation of these wells solely on the scant information concerning the alleged sale price provided by the taxpayer and its own self-serving representations. We find no evidence to support the contention that Kratzer abused his much discretion in finding the information submitted by D90 through its agent insufficient to assess the value of these wells based solely on sale price. The district court's notion that the Commission did not abuse *its* discretion when it made its determination based on witness testimony before it and evidence submitted in the hearing is misplaced. The Commission was to review Assessor Kratzer's assessment under an abuse of discretion standard of review. It was not the Commission's role to assess the property but rather to determine whether Assessor

24

Kratzer abused his discretion in arriving at the assessed value of the property based on what was provided him by the taxpayer requesting a lower valuation than that arrived at by Kratzer applying the rules and regulations promulgated by the state for valuing these properties. In *ANR Pipeline* this court rejected the notion that the burden is on the assessor rather than the taxpayer:

> The companies' second assignment of error urges that the commission and the trial court placed the burden of proof of obsolescence on them rather than the assessor. They cite La. R.S. 47:2324, which provides, in pertinent part (emphasis theirs), "Each assessor *shall* gather all data necessary to properly determine the fair market value of all property subject to taxation within his respective parish or district." They also contend that the commission's regulations regarding the forms taxpayers must file, specifically the LAT 14 form, require the assessor to return insufficient forms for further compliance. La.Admin.Code 61:V.1303(B). Lastly, the companies cite our decision in *Warren Energy Resources, Inc. v. Louisiana Tax Commission,* 02–115 (La.App. 3 Cir. 8/28/02), 825 So.2d 572, *writ denied,* 02–2450 (La.12/13/02), 831 So.2d 985, for the proposition that La.R.S. 47:2324 requires the assessor to be more than a passive analyst of the sufficiency of the documentation submitted by the taxpayer.

> **The companies, though, ignore §2324's express approval of an assessor's use of self-reporting forms to secure the data he needs in order to determine the FMV of property**. **And our courts have long held that the party seeking obsolescence bears the burden of producing sufficient evidence to the assessor.** *Dow Chemical Co. v. Pitre,* 468 So.2d 747 (La.App. 1 Cir.1985), *writ denied,* 474 So.2d 1308 (1985); *Bailey v. Enervest Operating Co., LLC,* 45,553 (La.App. 2 Cir. 6/30/10), 43 So.3d 1046.

*ANR Pipeline Co.*, 73 So.3d at 402-03 (bold emphasis added).

We also said in *ANR Pipeline*:

> Parish tax assessors appraise the value of property within their parishes. *It is incumbent upon taxpayers positioned to claim a reduction of their ad valorem tax liability to prove they are entitled to that reduction.* The value of property owned by a taxpayer in one parish will have a different value in another parish, even assuming properties of the same size. Property in one parish will prove economically more beneficial than property in another parish. Property in one parish will see more use than property in another parish. Thus, in claiming economic obsolescence before a parish assessor, one must demonstrate that obsolescence particular to the parish in question. *The determination of whether the information provided is satisfactory rests within the sound discretion of the assessor, subject to review at several levels.*

*ANR Pipeline,* 73 So.3d at 405 (emphasis added).

For the reasons stated we find no abuse of discretion by Assessor Kratzer in his assessments for 2013 and 2014 based on the information provided by D90. We further find the district court erred as a matter of law in failing to apply the proper standard of review and we reverse its judgment upholding the Tax Commission's findings. We reinstate the decision of the Jefferson Davis Board of Review finding no abuse of discretion in Assessor Kratzer's assessed values for 2013 and 2014. We also expressly find that D90 is not entitled to any refund of its taxes paid under protest for 2013 and 2014. We note, too, that because D90 did not make any payment concerning its taxes for 2015 and 2016, the Tax Commission's order for reimbursement of taxes paid had no application to those tax years. D90 is obligated to pay its taxes on the subject property for 2015 and 2016 in accordance with the law.

All costs of this appeal are assessed against D90 Energy, LLC.

**REVERSED, JUDGMENT VACATED;**
**JEFFERSON DAVIS BOARD OF REVIEW**
**DECISION REINSTATED.**